The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Efrain Reyes MERAZ, Defendant–
Appellee.

No. 98SA124.

Supreme Court of Colorado,
En Banc.

June 29, 1998.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Plaintiff–Appellant.

Ronald M. Aal, Denver, for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the Adams County District Court suppressing evidence of controlled substances found in the defendant's residence during the execu-

tion of a search warrant for the defendant's (Meraz's) home. The affidavit supporting the search warrant contained, in part, information supplied by a confidential informant. The district court determined that the affidavit lacked probable cause since the affidavit failed to state how the informant obtained his information. We hold that the source of the confidential informant's information is only one factor in determining whether a warrant is supported by probable cause, and that under the totality of the circumstances test, which requires us to examine all relevant factors, the affidavit in this case establishes probable cause and passes constitutional muster. Thus, we reverse the district court's ruling granting Meraz's motion to suppress.

## I.

On July 7, 1997, Wilbert Duane Neuenkirk contacted Investigator Michael Thomas of the Aurora Police Department's vice and narcotics sections and reported that his brother-in-law, Patrick Stoffel, was selling marijuana. According to Neuenkirk, Stoffel was selling ten to twenty pounds of marijuana a week from Stoffel's home located at 3081 Zion Street in Aurora. Neuenkirk indicated that Stoffel sold marijuana a pound at a time and that he acquired marijuana from his neighbor who lives just south of him. Neuenkirk thought that the neighbor's name was "Efrain." Neuenkirk stated that he heard Stoffel talk about his neighbor "Efrain" obtaining marijuana from Mexico, and that when Stoffel needs more marijuana, he jumps the back fence between the two homes to procure the marijuana.

On August 14, 1997, Vince Barrera, a narcotics officer with the West Metro Drug Task Force, contacted Aurora Police Investigator Gary Sullivan and informed him of a tip that he received from a confidential informant. The confidential informant stated that on approximately August 10, 1997, he learned that a Hispanic male named Efrain Reyes who lived on Zion Street near 30th Avenue had approximately one hundred pounds of marijuana in his home. The confidential informant indicated that the marijuana was located in the rafters of the garage and in the crawl space of the room addition to the home. Although the confidential informant did not know the exact address of the home, he stated that it was located on Zion Street near 30th Avenue and he described the location of the residence with sufficient detail to allow Investigator Thomas to believe that the address was 3073 Zion Street. Officer Barrera stated that the confidential informant "appear[ed] to be very reliable," and that the informant assisted Officer Barrera on two prior occasions resulting in the recovery of eighty-five pounds of marijuana and a felony arrest.

Investigator Thomas contacted the Department of Motor Vehicles and learned that Patrick Stoffel lived at 3081 Zion Street in Aurora, and that Efrain Reyes lived at 3073 Zion Street, next door and directly south of Stoffel's residence.

Investigator Thomas prepared an application for a warrant to search the residence at 3073 Zion Street that included an affidavit stating the facts set forth above.[1] A county court judge signed the warrant on August 14, 1997. That day, law enforcement officials executed the warrant and discovered a large quantity of marijuana; drug paraphernalia; and approximately nine hundred dollars. The defendant, Efrain Reyes Meraz, was arrested at the residence and charged with unlawful possession with intent to distribute marijuana. See § 18–18–406, 6 C.R.S. (1997).

Prior to trial, defense counsel filed a motion in Adams County District Court to suppress all evidence seized in the search of Meraz's residence. At a hearing on March 20, 1998, the district court granted the motion, holding that information contained in the affidavit supporting the warrant did not establish probable cause. The district court observed that the affidavit submitted in support of the warrant relied in part on information supplied by a confidential informant, and that it was not clear from the affidavit how the confidential informant obtained his information. The district court stated that the confidential informant's reliability standing alone could not justify a warrant, and that no warrant could issue unless the affiant ex-

---

1. The affidavit is attached to this opinion as an appendix.

plained how the informant obtained the information set forth in the warrant.[2] The People then filed this interlocutory appeal.

## II.

■■ The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution prohibit the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and the objects to be seized. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7; *Henderson v. People,* 879 P.2d 383, 391 (Colo.1994). Probable cause for a search warrant exists when the affidavit submitted in support of the warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched. *See Henderson,* 879 P.2d at 391. A probable cause determination is limited to the four corners of the affidavit. *See People v. Titus,* 880 P.2d 148, 150 (Colo. 1994).

In *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court established a two-part test to determine the adequacy of an affidavit that relies on information obtained from a confidential or anonymous informant. The first step of this test required the affiant to reveal the informant's "basis of knowledge," which is the means by which the informant obtained the information. The second step required the affiant to establish either the informant's veracity or the informant's reliability. *See Aguilar,* 378 U.S. at 114, 84 S.Ct. 1509; *Spinelli,* 393 U.S. at 416, 89 S.Ct. 584.

Later, in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the *Aguilar–Spinelli* rule in favor of a test that examines the totality of the circumstances and asks the "commonsense, prac-tical question whether there is probable cause to believe that contraband or evidence is located in a particular place." *Id.* at 230, 103 S.Ct. 2317. The Gates court stated that the informant's basis of knowledge, veracity, and reliability are highly relevant, but not conclusive factors. *See id.* In determining the overall reliability of a tip, a strong showing in one of these areas—or the existence of some other indicia of reliability—may compensate for the absence of one of the factors. *See id.* at 233, 103 S.Ct. 2317. The *Gates* court stated:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Id.* at 233–34, 103 S.Ct. 2317 (citations omitted).

We adopted the *Gates* totality of the circumstances test in *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986). Since that decision, we have reaffirmed the principle that an informant's basis of knowledge is a factor for consideration and is not a prerequisite to a finding of probable cause. *See People v. Pate,* 878 P.2d 685, 689–90 (Colo.1994); *People v. Leftwich,* 869 P.2d 1260, 1266–68 (Colo. 1994); *People v. Paquin,* 811 P.2d 394, 397 (Colo.1991).

---

2. The district court additionally ruled that the officer's reliance on the warrant was not justified under the "good faith" exception. *See United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *People v. Altman,*

960 P.2d 1164, 1168–69 (Colo.1998). We do not reach the issue of the applicability of the "good faith" exception since we resolve this case on the grounds that the affidavit was sufficient.

Under the totality of the circumstances test, the court must examine all of the relevant factors. A highly detailed statement from an informant may allow a judge to conclude that the informant had access to reliable information about the activities. *See People v. Abeyta*, 795 P.2d 1324, 1327–28 (Colo.1990). Police corroboration of some of the information provided by the informant may support a finding of probable cause, even when all of the corroborated details relate to innocent, non-criminal activities. *See Titus*, 880 P.2d at 150; *People v. Diaz*, 793 P.2d 1181, 1185 (Colo.1990). The statements of other witnesses may also corroborate an informant's account and elevate the degree of suspicion to probable cause. *See* Wayne R. LaFave, *Search and Seizure* § 3.3, at 170 (3d ed.1996). Another relevant factor is whether the information is current and not stale. *See People v. Hearty*, 644 P.2d 302, 311 (Colo.1982).

The issuing magistrate's probable cause determination receives deference and is not reviewed de novo. *See Henderson*, 879 P.2d at 391. The duty of a court reviewing the sufficiency of an affidavit for probable cause is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Pate*, 878 P.2d at 690.

### III.

Turning to the facts of this case, we note that the district court considered two factors: the confidential informant's reliability and the basis of the informant's knowledge. The district court ruled that the informant's reliability standing alone was not enough to constitute probable cause, and that the warrant was per se insufficient absent an explanation of the informant's basis of knowledge. In doing so, the district court applied the *Aguilar–Spinelli* rule that was overruled by *Gates*. Under *Gates* and the Colorado cases adopting *Gates*, the omission of an informant's basis of knowledge from the affidavit does not necessarily require a reviewing court to invalidate a search warrant. Thus, the district court followed an incorrect standard of law to determine whether this affidavit states probable cause.

We now apply the totality of the circumstances test to determine the sufficiency of the affidavit in this case. As noted by the district court, the affidavit did not state the informant's basis of knowledge. However, the affidavit stated that the informant appeared reliable, having assisted Officer Barrera on two prior occasions resulting in the recovery of eighty-five pounds of marijuana and a felony arrest. The informer obtained this information four days prior to the issuance of the search warrant; thus, the information was relatively current and not stale.

In addition, the information supplied by the confidential informant was fairly detailed. The informant supplied these facts: the suspect's first and last name, his race, the type and quantity of drugs located at the residence, and the location of the drugs within the residence. Although the confidential informant did not know Meraz's address, he stated that the home was located on Zion Street near 30th Avenue and described the location of the residence with enough detail to allow Investigator Thomas to identify the house and corroborate the specific street address.

Another relevant factor is that Investigator Thomas received a tip from Neuenkirk containing facts consistent with the informant's statements. Neuenkirk stated that Meraz might be selling large amounts of marijuana to at least one person, that these sales were occurring at Meraz's home, and that Meraz purportedly obtained the marijuana from Mexico. Neuenkirk also related Meraz's first name and the location of Meraz's residence. Moreover, Neuenkirk was not an anonymous or a confidential informant. Information from a citizen witness who identifies himself or herself may be more reliable than information from an anonymous tip or from a police informant who supplies information on a regular basis. *See* Lafave, *supra*, § 3.4, at 204.

Investigator Thomas corroborated some of the facts alleged in these two tips. He learned from the Department of Motor Vehicles that Patrick Stoffel lived at 3081 Zion Street and that "Efrain Reyes" lived at 3073 Zion Street, which is next door and directly

south of Stoffel's residence. Thus, Investigator Thomas corroborated Neuenkirk's assertion that Stoffel and Meraz were neighbors with Meraz living south of Stoffel. The Department of Motor Vehicles information also corroborated the confidential informant's description of the home on Zion Street near 30th Avenue.

Considering all of the relevant factors under the totality of the circumstances test, and giving deference to the issuing judge, we hold that this affidavit provides a "substantial basis" for the issuing judge's conclusion that it established probable cause. Thus, we reverse the ruling of the district court granting the motion to suppress, and we remand this case for further proceedings.

## APPENDIX

COUNTY COURT, ADAMS COUNTY, COLORADO

Case No.——— APD Case No.———

AFFIDAVIT AND APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, Investigator Michael D. Thomas, the Affiant, under oath states: That the Affiant has reason to believe that at the place described as:

> 3073 Zion Street, Aurora, Adams County, Colorado, further described as a two-story home with an attached garage. The home is of red brick construction with red painted trim and white siding. Attached to the front of the house are black three inch numerals "3–0–7–3" positioned to the left side of the front door.

> And upon person or persons within the above described structure.

in the County of Adams, State of Colorado, is located certain property, to-wit:

> Controlled substance namely marihuana; as defined in C.R.S. 18–18–406. This controlled substance with such vessels, implements, and furniture used in connection with the manufacture, production, storage,

or dispensing of such drugs and articles of personal property tending to establish the identity of the person in control of contraband related paraphernalia consisting in part and including, but not limited to, firearms, rent receipts, mail envelopes, photographs, and keys are items to be searched for.

for which a search warrant may be issued under the provisions of Rule 41, Colo. R.Crim. P., on grounds that said property is stolen; is designed and intended for use as a means of committing a criminal offense; is or has been used as a means of committing a criminal offense; that the possession of said property is illegal; and would be material evidence in a subsequent criminal prosecution.

**THE FACTS WHICH GIVE RISE TO THIS BELIEF AND WHICH ESTABLISH PROBABLE CAUSE TO BELIEVE THAT GROUNDS FOR THE ISSUANCE OF A SEARCH AND SEIZURE WARRANT EXIST ARE THE FOLLOWING:**

Your Affiant, Investigator M.D. Thomas, of lawful age and being first duly sworn upon oath, depose and state that I am a Police Officer employed by the City of Aurora Police Department and that the following information was obtained by me personally and from official records of the aforementioned Department.

Your Affiant, Investigator M.D. Thomas, is a Police Officer with the Aurora Police Department's Vice and Narcotics Sections and has been a police officer since November of 1982. Your Affiant is presently assigned to the Aurora Police Department Special Investigations Narcotics Division. Your Affiant has received 80 hours of training concerning Drug Abuse Resistance and Education (D.A.R.E.). Your Affiant was actively involved in the neighborhood stabilization project in Aurora Colorado. This project was primarily responsible for the detection and suppression of street crime to include the investigation of illegal narcotics. Your Affiant has received specific training in the area of narcotics investigation and has completed: 80 hours training with the United States

Drug Enforcement Administration in the area of Basic Narcotics Investigations. Your Affiant has participated in numerous possession and distribution investigations. Suspects have been arrested and controlled substances have been seized. Your Affiant is thoroughly familiar with the appearance and packaging of illegal narcotics, and of the ways in which it is concealed, transported and distributed.

Your Affiant further informs the Court of the following:

On July 7, 1997, your Affiant was contacted by a citizen identified as Wilbert Duane Neuenkirk DOB/080561 who advised your Affiant of the following information:

Mr. Neuenkirk advised that his brother-in-law named Patrick Stoffel was selling marijuana from his home, located at 3081 Zion Street, Aurora, Adams County, Colorado. Mr. Neuenkirk told your Affiant that Patrick Stoffel sells from ten (10) to twenty (20) pounds of marijuana a week from his home and obtains the marijuana from his neighbor who lives just south of him. Mr. Neuenkirk thinks that the neighbor's name is "Efrain."

Mr. Neuenkirk advised that he has heard his brother-in-law talk about his neighbor "Efrain" obtaining the marijuana from Mexico. Mr. Neuenkirk advised that his brother-in-law will only sell pounds of marijuana at a time. When his brother-in-law needs additional marijuana, he simply jumps the back fence to the two homes and obtains the marijuana.

On August 14, 1997, at approximately 16:00 hours, Aurora Commissioned Police Investigator Gary Sullivan was contacted by Vince Barrera, a Narcotics Officer with the West Metro Drug Task Force. Officer Barrera advised that a Confidential Informant contacted him by phone and advised him of the following information:

The Confidential Informant advised that a Mexican party by the name of Efrain Reyes, living on Zion Street near 30th Avenue, has approximately one hundred (100) pounds of marijuana in his home. The Confidential Informant obtained this information four (4) days ago. The Confidential Informant ad-

vised that the marijuana is located in the rafters of the garage and in the crawl space of the room addition to the home. The Confidential Informant was unable to give the exact address of the home but described the location of the residence which leads your Affiant to believe the address to be 3073 Zion Street.

Your Affiant confirmed through the Department of Motor Vehicles that Patrick Stoffel lives at 3081 Zion Street, Aurora, Adams County, Colorado. A party identified as Efrain Reyes lives at 3073 Zion Street, Aurora, Adams County, Colorado, which is next door and directly south of Mr. Stoffel's residence.

Officer Barrera advised that the Confidential Informant appears to be very reliable. The Confidential Informant has assisted Officer Barrera on two (2) prior occasions resulting in the recovery of eighty five (85) pounds of marijuana and a felony arrest.

Your Affiant would request that this search warrant be a "No Knock" warrant, also referred to as an "Immediate Entry" warrant, to preserve evidence from being sold, moved, or destroyed. Your Affiant informs the Court that an "Immediate Entry" warrant will ensure the safety of the officers executing the search warrant. Since January, 1990, members of the Aurora Police Department, Special Operations Bureau, Vice and Narcotics Unit, have worked in excess of 300 cases, which have resulted in search warrants being executed all of which were "Immediate Entry" warrants. During the execution of these "Immediate Entry" warrants, firearms have been recovered in over 50% of these cases involving the trafficking of Illegal narcotics. Firearms recovered have included, but not limited to, sawed-off shotguns, assault rifles, machine pistols, and various types of calibers of handguns.

Organized groups, such as illegal Aliens, Mexican Mafia, and Mexican Gang members transport illegal narcotics and marijuana into the United States from Mexico. These organized groups often carried firearms on their person(s), as well as in their residence(s) to protect their drugs and/or money from other individuals.

Your Affiant informs the Court that the use of highly trained, specially equipped rapid entry teams enhance the safety of the entry for police officers, suspects, and members of the public in the immediate area. This safety is enhanced by enabling police officers to enter the residence before any occupant(s) can react. Additionally, such rapid entry interferes with the ability of the occupant(s) to destroy or conceal items of evidentiary value.

Your Affiant would, therefore, request the search of the premise to include person(s) found inside.

Based on the aforementioned facts and circumstances, your Affiant believes there is probable cause for the crime(s) of possession, sale, distribution, manufacturing, and delivery of marijuana, a Controlled Substance, contrary to C.R.S. Section 18–18–204 and 18–18–406.

Application is hereby made for issuance of a search warrant, directed to any officer authorized by law to execute warrants in the county wherein said property is located, commanding said officer to search forthwith the person or place named above for said property, and the said property and every part thereof to take, remove and seize using such force as may reasonably be required in the execution of the warrant, and directing that return thereof be made to the judge issuing the warrant.

Affiant has read the above and foregoing application and affidavit, and the statements therein contained are true to the best of his/her knowledge, information, and belief.

_____

AFFIANT

SUBSCRIBED AND SWORN to before me this 14th day of August, A.D., 1997.

_____

JUDGE