The PEOPLE of the State of Colorado,
Plaintiff/Appellant,

v.

Jack Lee RANDOLPH,
Defendant/Appellee.

No. 00SA85.

Supreme Court of Colorado,
En Banc.

July 3, 2000.

478

Michael F. Green, District Attorney, Katherine H. Cabot, Deputy District Attorney, Cortez, Colorado, Attorneys for Plaintiff/Appellant.

Kelly R. McCabe, P.C., Kelly R. McCabe, Hazen D. Brown, Cortez, Colorado, Attorneys for Defendant/Appellee.

Justice KOURLIS delivered the Opinion of the Court.

In this interlocutory appeal, the State challenges an order suppressing physical evidence discovered during the execution of a search warrant. The district court found that the search warrant lacked probable cause because it was supported only by a "bare bones" affidavit. The district court also held that because the warrant was so facially lacking in probable cause, the police were not entitled to rely on it. Therefore, the evidence was not admissible under the

good-faith exception to the exclusionary rule. The State challenges the district court's characterization of the affidavit, and in the alternative, argues that the good-faith exception to the exclusionary rule applies.

Because we agree that the affidavit was so deficient that it supported neither the issuance of the warrant nor good-faith compliance with that warrant, we uphold the suppression order of the trial court.

## I.

### A.

On October 25, 1999, police officers in a Colorado drug task force met with an informant. The informant had been arrested in Utah for possession of methamphetamine and precursors, and had agreed to reveal his supplier to Colorado police. The informant told the police that an individual named Steven Lee Garner manufactured and distributed methamphetamine, and that night the informant purchased drugs from Garner while under police surveillance. The day after the purchase, October 26, 1999, the informant revealed to police that Garner lived in a trailer on property owned by the defendant in this case, Jack Randolph. The informant told police that he personally had observed Garner and Randolph smoke methamphetamine in Randolph's mobile home within the last two months. The informant further reported that Randolph sold marijuana for Garner.

The same day, Agent Dennis Spruell signed an affidavit seeking the arrest of Garner and the search of Randolph's property "at which Steven Lee Garner resides." Paragraphs 1–13 of the affidavit related to the arrest of Garner. Paragraph 14 outlined the grounds for a search of Randolph's property:

> On 10/26/99 at 8:00 a.m., Agent Bennett re-interviewed [the informant]. [The informant] told Agent Bennett that he had observed Steven Lee Garner take Methamphetamine, that Garner had manufactured, to the barn, close to Jack Randolph's residence to be weighed. [The informant] also told Agent Bennett that he had observed Jack Randolph and Steve Garner smoke Methamphetamine in Jack Randolph's mobile home within the last two months. According to [the informant], Jack Randolph also sells Marijuana for Steven Lee Garner.

A photograph of the property was attached to the affidavit. The affidavit sought a search warrant for drugs and drug paraphernalia covering:

> the property located at 30897 Hwy. 184, Dolores State of Colorado, County of Montezuma, to include a small camp trailer at the bottom of a hill just East of the main residence at 30897 Hwy. 184, located next to an old gravel pit, a brown trailer with a galvanized roof with attached wood shed, a pink and white trailer with a chain link fence on West Side of trailer, a wood barn surrounded by horse corrals and a cinder block shop with a cream metal roof, all out buildings [ ] and all motor vehicles located on the property.

A county court judge signed the warrant covering the property described in the affidavit.

Agent Spruell and other officers executed the warrant the following day, October 27, 1999. The officers searched the brown mobile home in which Randolph lived, the electrical shop building, and the mobile home of Jennifer Randolph. The search of Randolph's residence revealed marijuana, methamphetamine, firearms, a small amount of cash, and drug paraphernalia. The State subsequently charged Randolph with possession of drug paraphernalia, possession of a controlled substance, conspiracy to manufacture a controlled substance, conspiracy to distribute a controlled substance, conspiracy to distribute marijuana, and two sentence enhancers including possession of a deadly weapon during the commission of a crime.

### B.

Randolph moved to suppress the evidence that the officers discovered in the search on the grounds that the search was an illegal neighborhood search, the affidavit supporting the search warrant was overly broad, the statements of the informant were not corrob-

orated, and therefore, the search warrant lacked probable cause.

After holding a hearing on the issue, the district court agreed that there was not a substantial basis to support a finding of probable cause for the search warrant. Upon examining the totality of the circumstances, the district court found that the geographic scope of the warrant was overbroad. Specifically, the court found that the affidavit did not link buildings other than the barn and Randolph's trailer to any criminal activity. The district court also found that the informant's bare assertion of knowledge was not sufficient to establish probable cause as to the marijuana sales, and that the police failed to corroborate the information offered by the informant. Therefore, the court granted the motion to suppress. The district court also ruled that the good-faith exception to the exclusionary rule did not apply. The court held that the officers' reliance on the warrant was not objectively reasonable because the warrant failed to specify where the drug activity observed by the informant had taken place.

The State filed this interlocutory appeal, claiming that the district court erred both as to the warrant's lack of probable cause and as to the application of the good-faith exception to the exclusionary rule.

## II.

■■■ The first question the court must address is whether the affidavit contained sufficient information to support a finding of probable cause to issue a valid search warrant under the Fourth Amendment. *See* U.S. Const. amend. IV; *see also* Colo. Const. art. II, § 7. "Probable cause exists when an affidavit for a search warrant alleges facts sufficient to cause a person of reasonable caution to believe that contraband or

evidence of criminal activity is located at the place to be searched." *People v. Turcotte–Schaeffer,* 843 P.2d 658, 659–60 (Colo.1993). Probable cause must exist within the four corners of the affidavit. *See People v. Meraz,* 961 P.2d 481, 483 (Colo.1998). When a reviewing court examines a search warrant after the fact to determine if it was valid, the court should assess whether the affidavit provided the magistrate with a "substantial basis" for concluding probable cause existed. *See Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■■■ Generally, an affidavit must specify with particularity the places to be searched. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7. This means that probable cause must be established as to each separate place to be searched.[1] *See People v. Arnold,* 181 Colo. 432, 434, 509 P.2d 1248, 1249 (1973) (requiring specific indicators of illegal activity as to each apartment listed in a search warrant). A blanket allegation of criminality on a shared property is not sufficient. *See id.; see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5(c) (3d ed.1996) (stating that while a single search warrant may authorize more than one place to be searched, the warrant must show probable cause as to each of the named premises).

■■■ If the affidavit is based on a tip from an informant, the reviewing magistrate also must analyze the affidavit to determine whether the informant's allegations are sufficient to support a finding of probable cause. This analysis takes into account the totality of the circumstances, including the informant's veracity or reliability and his basis of knowledge. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *People v. Pannebaker,* 714 P.2d 904, 907 (Colo.1986).[2] The totality of the circumstances analysis also may include the

---

1. This rule does not necessarily apply to outbuildings closely related to a single residence. *See People v. Muniz,* 198 Colo. 194, 198–99, 597 P.2d 580, 582 (1979) (upholding the search of a shed located 30 feet from a home within an enclosed yard when the warrant covered the "premises" at the home's address).

2. An informant's reliability may be gauged by whether the informant's identity is known, and

whether he previously has provided accurate information to police. *See Gates,* 462 U.S. at 233, 103 S.Ct. 2317. Generally, citizen-informants are not subject to the same credibility standards as confidential informants. *See People v. Pate,* 705 P.2d 519, 521 (Colo.1985). However, there is nothing in the facts to support, nor do either of the parties argue, that this informant should be treated as a citizen informant.

depth of detail provided by the informant, as courts have inferred reliability from an informant's ability to provide details that could not be obtained easily. *See Turcotte–Schaeffer*, 843 P.2d at 661. How current the information is also plays a role in the totality of the circumstances. *See Meraz*, 961 P.2d at 484.

■ The totality of the circumstances analysis further focuses on the level of independent police corroboration. *See Pannebaker*, 714 P.2d at 907. Although an informant's statements, standing alone, may not rise to the level of probable cause, additional investigation by police to corroborate the informant's statements may create probable cause. *See Gates*, 462 U.S. at 241–42, 103 S.Ct. 2317. Corroboration of illegal activity is not an indispensable component of the probable-cause determination, as corroboration of seemingly innocent details may suffice. *See Meraz*, 961 P.2d at 484.

■ Using all of those analytical tools, the reviewing magistrate must determine whether the affidavit provided a substantial basis for concluding that probable cause exists. *See Gates*, 462 U.S. at 239, 103 S.Ct. 2317. Appellate courts generally defer to the magistrate's determination, because the probable cause standard does not lend itself to mathematical certainties, and " 'reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause.' " *People v. Altman*, 960 P.2d 1164, 1167 (Colo.1998) (quoting *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

■ However, if an affidavit is so deficient that it cannot reasonably support a difference of opinion about its sufficiency, then it is termed a "bare bones" affidavit. *See Gates*, 462 U.S. at 239, 103 S.Ct. 2317. A bare bones affidavit is one containing "wholly conclusory statements devoid of facts from which a magistrate can independently determine probable cause." *Altman*, 960 P.2d at 1170. This court has termed an affidavit bare bones when it contained only vague allegations speculating that the defendant engaged in illegal activity and when the affidavit failed to establish a nexus between the alleged criminal activity and the place to be searched. *See People v. Leftwich*, 869 P.2d 1260, 1270–71 (Colo.1994).

■ This particular affidavit is a bare bones affidavit. The three allegations in the affidavit—carrying methamphetamine to the barn, smoking methamphetamine in Randolph's trailer, and selling marijuana are conclusory. They contain no details from which the magistrate could infer that the informant had a personal basis of knowledge. Although the informant was not an anonymous informant, he had no apparent history of providing accurate tips to the police. Further, the allegation of smoking methamphetamine is stale, as it had occurred only some time within the past two months. The informant's other statements fail to include time frames.

The most serious problem with the affidavit, however, is its geographic scope. The affidavit listed at least five separate buildings without connecting the alleged criminal activity to each of those buildings. At most, the affidavit alleged criminal activity in the barn and Randolph's trailer. In addition, nothing in the affidavit indicated common ownership of the property by Randolph. At the suppression hearing, the agents testified that they had conducted surveillance on the property and that they had determined that the brown trailer was Randolph's residence. The agents, therefore, easily could have narrowed the scope of their search.

The defects in the informants' statements are not cured by the agents' attempts to corroborate the statements. The agents' surveillance does not appear to have revealed any details that would indicate that drug related activities were taking place on Randolph's property. The testimony of the agents at the suppression hearing also did not include corroboration of any innocuous details that would support the informant's statements. Thus, it does not appear that additional information was available that could have been included in the affidavit.

Accordingly, we hold that this affidavit was conclusory, lacking in particularity, and in-

sufficient to support probable cause for the issuance of a search warrant. The penalty for execution of a search warrant unsupported by probable cause is the suppression of all evidence gained in the search. *See Leon*, 468 U.S. at 906, 104 S.Ct. 3405. Because this search warrant was defective, the trial judge properly determined that the exclusionary rule prohibited the admission of the physical evidence discovered during the search.

### III.

The State argues that even if the search warrant was defective, the fruits of that search are nonetheless admissible because the officer executing the warrant reasonably believed in good-faith that it was legal and sufficient.

 The "good-faith exception" to the exclusionary rule protects the reasonable, good-faith belief of an executing officer that he is proceeding in compliance with a legitimate warrant, and permits the evidence so obtained to be admissible even if a reviewing court later finds that the warrant was defective. *See United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The test for application of the exception is whether it was objectively reasonable for the officer to rely upon the warrant. *See id.* at 922, 104 S.Ct. 3405. In determining "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," a reviewing court should take all the circumstances surrounding the issuance of the warrant into account. *Id.* at 922–23, n. 23, 104 S.Ct. 3405.

 The General Assembly in Colorado has codified a version of the *Leon* test

that permits admission of tainted evidence if the evidence was seized "as the result of a good-faith mistake or of a technical violation." § 16–3–308(1), 6 C.R.S. (1999).[3] The *Leon* "objectively reasonable" standard and the statutory "good-faith" standard are substantially similar. *See Leftwich*, 869 P.2d at 1272. Colorado's statute, however, additionally creates a presumption that an officer was acting in good faith if he acted pursuant to a warrant. *See* § 16–3–308(4)(b); 6 C.R.S. (1999); *see also Altman*, 960 P.2d at 1168. This presumption may be rebutted though, if the officer failed to undertake the search in a good-faith belief that it was reasonable. *See Altman*, 960 P.2d at 1169. "If no reasonable officer would have relied upon the warrant, then objective good faith is absent and the good faith exception offers no shelter." *Id.*

 This test imposes upon the officers involved in obtaining and executing a search warrant a continuing duty to exercise reasonable professional judgment. *See id.* at 1170. An officer may not automatically assume that a warrant is valid because a reviewing magistrate has executed it. *See id.* (stating that in an ideal system, no magistrate would approve a defective warrant, but that because ours is not an ideal system, an officer must exercise his own judgement). That officer must read the affidavit and warrant carefully and must be objectively persuaded that the warrant is sufficient.

The Supreme Court has listed four circumstances in which the officer could not reasonably rely on a warrant: (1) where the magistrate was misled by a known or recklessly made falsehood; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the warrant is so facially deficient that the officer cannot reasonably determine the particular place to be searched; or (4) where

---

**3.** (1) Evidence which is otherwise admissible in a criminal proceeding shall not be suppressed by the trial court if the court determines that the evidence was seized by a peace officer ... as a result of a good faith mistake....

(2)(a) "Good faith mistake" means a reasonable judgmental error concerning the existence of facts or law which if true would be sufficient to constitute probable cause.

(4)(b) It shall be prima facie evidence that the conduct of the peace officer was performed in the reasonable good faith belief that it was proper if there is a showing that the evidence was obtained pursuant to and within the scope of a warrant, unless the warrant was obtained through intentional and material misrepresentation.

§ 16–3–308, 6 C.R.S. (1999).

the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)); *see also Altman*, 960 P.2d at 1169.

■ The facts of this case implicate the fourth circumstance, because the affidavit failed to specify which buildings likely were involved in criminal activity. *See supra* Part II. The officer who conducted the investigation and failed to corroborate the details provided by the informant was the same officer that prepared the deficient affidavit. The language in the warrant mirrored the language in the affidavit. Therefore, the officer either knew, or should have known, that the warrant was lacking in probable cause, and it was not objectively reasonable for him to rely on it.

Similarly, in *People v. Leftwich*, this court considered whether an affidavit for a search warrant was so lacking in probable cause that the officer knew, or should have known, that the search was illegal. *See* 869 P.2d at 1270. The court concluded that the affidavit was a bare bones affidavit because it contained only unsupported conclusions not based on reliable information. *See id.* The officer also admitted that he had not corroborated any information the informant had told him, and that he knew that the information standing alone was not sufficient to create probable cause to search a residence. *See id.* at 1271. Because the officer knew that the affidavit did not establish probable cause, this court denied application of the good-faith exception, and suppressed the evidence. *See id.*

■ Application of the exclusionary rule depends on whether its deterrence purpose would be served. *See People v. Blehm*, 983 P.2d 779, 794 (Colo.1999); *see also Leon*, 468 U.S. at 916, 104 S.Ct. 3405 ("[T]he exclusion-

ary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."). For example, in *Blehm*, we permitted the police to rely on an arrest warrant that had been vacated unbeknownst to them. *See* 983 P.2d at 796. We refused to suppress the evidence because the purpose of deterrence would not be served by punishing a clerical error by court employees. *See id.*

This case presents different circumstances. Here, the police erred by submitting a defective affidavit to the county judge, and then by continuing to rely on that defective affidavit. The agents failed to corroborate the details in the affidavit, and they failed to narrow the search with particularity. Agent Spruell signed the affidavit and then executed the warrant. At each stage, he had a duty to exercise his independent good judgment to assure himself that the affidavit was sufficient. The reviewing magistrate's issuance of the warrant does not insulate that warrant from further analysis. Rather, because of the importance of the rights that the Fourth Amendment protects, the judiciary and law enforcement must act to assure compliance with probable cause requirements at each step.

As a result, we hold that the good-faith exception to the exclusionary rule does not encompass the facts of this case, and the district court's motion to suppress is affirmed. The case is remanded for further proceedings consistent with this opinion.