The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Michael Scott MAPPS, Defendant–Appellant.

No. 06CA1591.

Colorado Court of Appeals, Div. I.

May 14, 2009.

Rehearing Denied Oct. 8, 2009.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Michael Scott Mapps, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree felony murder, burglary, and solicitation to commit burglary. We affirm the judgment and hold that (1) the trial court properly denied Mapps's motion to suppress, (2) the admission of any hearsay statements was harmless error, and (3) the admission of police testimony about obtaining the search warrant was also harmless error.

## I. Background

On January 5, 2005, Michael Wessel and Richard James Kasparson burglarized the home of 82–year–old C.R., in Lakewood, during which Wessel fought and killed C.R. Wessel and Kasparson were arrested in late January, and Wessel asserted that Nick Savajian had recruited him to commit the burglary.

Savajian was then arrested on February 2, 2005. He refused to speak to the police. However, on April 19, 2005, after Savajian's preliminary hearing, he agreed to speak with law enforcement officials. As part of a plea agreement, he provided details of Mapps's involvement in the burglary.

Savajian told the district attorney and Detective Michael A. Rushford, who completed the affidavit to obtain a search warrant of Mapps's home, that approximately one year earlier, he and Mapps visited the home of C.R. and learned that C.R. collected firearms, Nazi memorabilia, and other antiques.

After the burglary, Savajian helped Mapps transport some of the stolen property to Mapps's house. Mapps told Savajian that he intended to keep the stolen firearms in his house and hide them inside the walls, and that he often kept firearms for over seven years, indicating that after a certain period the police no longer traced serial numbers on firearms.

Based primarily on Savajian's statements, Detective Rushford filed an affidavit and obtained a no-knock search warrant of Mapps's house on May 4, 2005. The SWAT team executed the search in the early morning of the following day, recovering some items stolen from C.R.'s house and discovering a methamphetamine lab.

Mapps was charged with first degree felony murder, second degree burglary of a dwelling, solicitation to commit burglary, and drug-related charges.

Prior to trial on the murder and burglary charges, which had been bifurcated from the drug charges, Mapps moved to suppress the admission of items seized from his residence, asserting the search warrant was issued without probable cause. The trial court denied the motion after a hearing in March 2006.

In April 2006, Mapps was convicted by a jury of first degree felony murder, burglary, and solicitation of burglary. He was sentenced to life imprisonment without parole.

In May 2006 Mapps pled guilty to manufacture of a controlled substance. He was sentenced to a consecutive term of thirty-two years for the manufacture of methamphetamine.

As to the drug charge, we conclude that Mapps has waived the right to challenge the plea. *See Waits v. People,* 724 P.2d 1329, 1337 (Colo.1986). Although this issue was not expressly addressed in the briefs, we consider Mapps's appeal limited to the judgment of conviction based on the jury verdicts.

## II. Motion to Suppress

Mapps contends that the trial court erred in denying his motion to suppress because there was no probable cause to support the issuance of the search warrant. More specifically, he asserts that the information in the affidavit was stale. We disagree.

A trial court engages in both fact finding and application of law in ruling on a motion to suppress. *People v. Hankins,* 201 P.3d 1215, 1218 (Colo.2009). We defer to the trial court's findings of fact if supported by the record, and we review the trial court's legal determinations de novo. *Id.*

"Both the United States and Colorado [C]institutions provide that a search warrant may only be issued upon a showing of probable cause, supported by oath or affirmation, particularly describing the place to be searched and the things to be seized." *People v. Kerst,* 181 P.3d 1167, 1171 (Colo.2008); *see* U.S. Const. amend. IV; Colo. Const. art. II, § 7.

"An affidavit establishes probable cause if it contains sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *Kerst,* 181 P.3d at 1172.

There is no mechanical formula for determining probable cause. *People v. Mil-*

*ler,* 75 P.3d 1108, 1112 (Colo.2003). Instead, the district court must consider the totality of the circumstances and make a "practical, common-sense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." *People v. Altman,* 960 P.2d 1164, 1167 (Colo.1998). However, the district court can consider only the information contained in the "four corners" of the affidavit. *People v. Russom,* 107 P.3d 986, 990 (Colo. App.2004).

An appellate court should uphold a search warrant if the affidavit creates a substantial basis for the conclusion that probable cause existed. *Miller,* 75 P.3d at 1112.

Here, the trial court determined that the affidavit established probable cause, but did not explicitly rule as to staleness.

Probable cause requires that there be current information of criminal activity or contraband located at the place to be searched. *Id.* at 1115. Whether information is current or stale is an important consideration in the totality of the circumstances analysis of probable cause. *Id.* at 1113. Information in the affidavit is stale if it is unlikely that the item to be seized is still present in the suspect's home. 14 Robert J. Dieter, *Colo. Prac., Criminal Practice & Procedure* § 12.14 (2d ed.2004). An affidavit based upon stale facts may not support a finding of probable cause, and a determination of whether the information is stale "depends upon the factual circumstances and the type of crime" in each case. *Miller,* 75 P.3d at 1113.

The lapse of time between commission of an offense and the execution of a warrant, while a consideration, is not determinative of the staleness of information. *See People v. Thrower,* 670 P.2d 1251 (Colo.App. 1983) (holding that a two-month lapse between the crime and the issuance of a search warrant did not render the information stale because the defendant's fingerprints were only recently matched to the scene of the crime); *see also United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (staleness is not to be measured "solely by counting the days on a calendar").

## A.  Preserved Error

At the outset, we reject the People's assertion that Mapps's staleness argument is raised for the first time on appeal because we conclude the issue was discussed during the suppression hearing.

Mapps did not explicitly challenge the search warrant on the basis that the information was stale, and he did not use the word "stale." However, he pointed out that a number of months passed between the homicide and the search warrant application for Mapps's residence. In addition, the prosecutor argued that despite the four-month delay, the information was not stale because "there's reason to believe that the information which is possessed is still pertinent and still relevant to finding property at this particular time at the residence."

Therefore, the staleness issue was sufficiently raised at the suppression hearing. *See People v. Young,* 987 P.2d 889, 893 (Colo. App.1999) (suppression issue not presented to the trial court and not properly preserved will not be addressed if raised for the first time on appeal).

## B.  Analysis

Mapps argues that because the supreme court has held that information one month or two months old was stale, *see Miller,* 75 P.3d 1108 (one month); *People v. Randolph,* 4 P.3d 477 (Colo.2000) (two months), the four-month-old information in the affidavit supporting the search warrant of his residence was also stale. We disagree.

Savajian was arrested on February 2, 2005 and in April, he disclosed Mapps's involvement in the January 5 incident to the police. Although the burglary occurred on January 5 and the search warrant was executed on May 5, the affidavit supporting the search warrant included Savajian's statements that Mapps:

● was "always eager to trade [drugs] for firearms, coins, and Nazi memorabilia,"

● said that he "keeps weapons for seven (7) years because the serial numbers are then deleted from the records,"

- "had some interest in [C.R.'s] Nazi sword,"
- had arrived at Savajian's home after the burglary to exchange drugs and money for some of the stolen property (including, the Nazi sword, most of the firearms, bones, and a Chinese table), which he loaded into his truck,
- had unloaded the stolen items from his truck into his house, with Savajian's assistance,
- stated that he intended to keep the firearms, which he would hide inside a wall at his home, and
- was a known "packrat," who kept a "large number" of firearms and Nazi memorabilia in his home.

The affidavit also included information provided by Wessel that Savajian had told him that Mapps would pay for the stolen items from C.R.'s home with drugs and cash. Also, the affidavit included Ginny Kasparson's statement that she saw Mapps the night of the robbery retrieving some of the stolen items and that she and Richard Kasparson traded coins stolen in the robbery with Mapps for drugs.

Stolen items may be highly mobile. *See* 2 Wayne R. LaFave, *Search & Seizure* § 3.7(a), at 386 n. 46 (4th ed.2004) (citing cases). However, the factual circumstances here, specifically, (1) that Mapps would keep firearms for "seven years," (2) that he intended to keep the stolen firearms hidden inside the walls of his home, and (3) that he was a "packrat," support a finding of probable cause that at least some of the stolen items would still be found at Mapps's residence.

Evidence that Mapps had sold one firearm and the Nazi sword does not negate the reasonableness of the trial court's conclusion that the police had probable cause to find other stolen items in his residence. *See United States v. Perry*, 531 F.3d 662, 666 (8th Cir.2008) (citing Eighth Circuit cases observing that survivalists and firearms enthusiasts retain their weapons for a long period, justifying a search warrant based on four-month-old information that the defendant possessed firearms); *State v. Ives*, 37

Conn.App. 40, 654 A.2d 789, 794 (1995) (holding that four-month-old information was not stale when it indicated that the defendant, an avid coin collector, might retain some of the stolen coins for his personal collection).

Further, nothing in the record supports the contention that, under the circumstances, the delay between the date of the burglary and the date the search warrant was executed was unreasonable. Information in the affidavit shows that the police were actively investigating the burglary and murder, and, indeed, obtained a search warrant of the Kasparsons' residence about three weeks after the incident. At that time, the police had no information that Mapps was involved in the burglary and murder, and did not learn of his possible involvement until Savajian confessed to his involvement in April.

Information in the affidavit thus justified the trial court's finding of probable cause and supports the reasonable belief that at least some of the stolen items would still be located in Mapps's residence four months after the burglary. Thus, we conclude that the affidavit created a substantial basis for finding probable cause.

### C. *Miller, Erthal,* and *Randolph*

Relying on *Miller*, 75 P.3d 1108; *People v. Erthal*, 194 Colo. 147, 570 P.2d 534 (1977); and *Randolph*, 4 P.3d 477, Mapps contends that a four-month delay in issuing a search warrant necessarily makes the supporting affidavit stale. We disagree and conclude that these cases are distinguishable.

In *Miller*, the supreme court concluded that information in a search warrant affidavit showing that the defendant had manufactured methamphetamine in his residence one month earlier was stale and did not support a finding of probable cause for the search warrant to issue. The trial court had granted the motion to suppress, which was affirmed. 75 P.3d at 1115.

There, the affidavit did not contain information showing that the illegal activity was ongoing, nor was there information corroborating the informant's statements. *Id.* at 1114. The court reasoned that prior case law demonstrated that "without current informa-

tion of criminal activity or contraband at the location to be searched, probable cause is typically lacking for issuance of the warrant." *Id.* at 1115. Accordingly, the court concluded *"[u]nder these circumstances,* the excessive delay ... renders the information stale and unreliable." *Id.* at 1114 (emphasis added).

The circumstances here are distinguishable. In *Miller,* the court discussed the mobility of methamphetamine manufacturing because the defendant had previously manufactured the drug at different locations. As discussed above, the information here supported a finding of probable cause that at least some of the stolen items would be found in Mapps's residence.

Next, Mapps cites to the *Miller* court's reliance on *Erthal,* where the supreme court affirmed a ruling that a two-month delay in obtaining information and applying for a search warrant in a theft case was stale. 194 Colo. 147, 570 P.2d 534. There, the police observed tools in the defendant's shop that were similar to those stolen from the defendant's former employer. Two months later, the police applied for a search warrant based on that information. The court reasoned that the affidavit provided "no information that the suspect continuously engaged in criminal activity or continued to use" the stolen tools, which might have justified the belief that the stolen items would still be located in the defendant's shop two months later. *Id.* at 148, 570 P.2d at 535. Therefore, there was no probable cause to justify the issuance of the search warrant.

Unlike in *Erthal,* the affidavit here showed that the stolen items likely would still be located at Mapps's house at the time the search warrant was approved. Moreover, in *Erthal,* the sheriff's office did not take any action between February 5 and April 1. *Id.* Here, law enforcement officers continually investigated the January 5 crime but did not discover the extent of Mapps's involvement until April.

Finally, in *Randolph,* the supreme court affirmed the trial court's ruling that an affidavit supporting a search warrant did not provide probable cause. 4 P.3d at 480. The supreme court concluded that a statement in

the affidavit that the informant had smoked methamphetamine with the defendant in the past two months was stale. *Id.* at 482

Here, in contrast, there was significantly more evidence presented in the affidavit than the statement of prior drug use in *Randolph.* As discussed, that information provided probable cause to believe that at least some of the stolen property would be located in Mapps's residence four months after the crime.

We affirm the trial court's denial of Mapps's motion to suppress because the affidavit established probable cause. Because the issuance of the search warrant was supported by probable cause, we do not address Mapps's argument that the good faith exception did not apply to cure any defects in the issuance of the search warrant.

## III. Evidentiary Issues

Mapps contends that the trial court erred in admitting certain testimony because it was either inadmissible hearsay or irrelevant search warrant evidence. We are not persuaded that admission of any of the statements requires reversal of Mapps's convictions.

### A. Hearsay Testimony

Mapps asserts that the following statements were hearsay and that they were improperly admitted, over his objection, during trial:

- Ginny Kasparson testified that (1) her husband had told her that Wessel knew someone who would pay cash and drugs for some items taken from the burglarized house; and (2) her husband detailed the burglary to her.

- Sergeant Jeff Streeter testified that Wessel told him after Wessel's arrest that he (Wessel) had violated three of the Ten Commandments, that he knew he was going to get caught, and that he had thought about suicide.

- Investigator John Lauck testified as to what Lisa Hicks, who stored Mapps's motor home on her property, told him. She said that Ben Mapps, Mapps's son,

had told her that it would be in her best interests to get rid of the motor home.

We review the trial court's rulings on evidentiary issues for abuse of discretion, which occurs when its rulings are manifestly arbitrary, unreasonable, or unfair. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002).

We review properly objected-to trial errors for harmless error. *Crider v. People,* 186 P.3d 39, 42 (Colo.2008). "[An] error will be disregarded as harmless whenever there is no reasonable probability that it contributed to the defendant's conviction." *Id.*

■ First, we conclude any error is harmless because Ginny Kasparson's testimony was cumulative. Similar evidence was also admitted during Savajian's testimony. Her testimony regarding Richard Kasparson's statements only corroborated Savajian's direct account of Mapps's involvement in the burglary. Thus, any error in the admission of her testimony was harmless. *See People v. Espinoza,* 989 P.2d 178 (Colo.App.1999) (concluding that error was harmless when the evidence was cumulative).

■ Second, we conclude that although Sergeant Streeter's testimony implicated Wessel in criminal activity, it did not implicate Mapps and therefore this testimony was not prejudicial to Mapps. Thus, any error in its admission is harmless.

■ Third, Investigator Lauck's testimony, which Mapps asserts was highly prejudicial double hearsay, does not pose a reasonable probability that it contributed to Mapps's conviction. Hicks testified at trial that Ben Mapps had called her and that she had found a crate of C.R.'s stolen property inside the motor home and reported it to the police.

Mapps maintains that Investigator Lauck's testimony was inculpatory because there was no direct evidence that Mapps placed the items in question in the motor home. However, other evidence, including Hicks's testimony, linked Mapps to the items found inside the motor home. Further, Investigator Lauck's testimony was not mentioned in closing argument. Thus, any error in the admission of Lauck's testimony was harmless because it did not substantially influence the verdict or impair the fairness of Mapps's trial.

**B. Issuance of the Search Warrant Testimony**

Mapps asserts that police testimony about the search warrant was improperly admitted because it "tells the jury in no uncertain terms that a judge thought there was sufficient evidence to believe that Mr. Mapps committed a crime, and thus [it] should believe so as well." We conclude there was no reversible error.

■ When a defendant does not object to testimony at trial, we review for plain error, which requires reversal when, after reviewing the entire record, we conclude that the fairness of the trial was sufficiently undermined so as to cast serious doubt on the reliability of the conviction. Crim. P. 52; *People v. Mullins,* 104 P.3d 299, 301 (Colo. App.2004).

Because Mapps did not object to the admission of this testimony at trial, we review for plain error. *See* Crim. P. 52(b); *Mullins,* 104 P.3d at 301.

■ Two police officers testified about the search warrant. Detective Rushford stated that he obtained a search warrant for Mapps's residence: he submitted an affidavit to the court, the court reviewed it, and then the court issued the warrant. Sergeant DeAndrea, a member of the SWAT team, testified that he entered Mapps's home to execute a judicially approved no-knock search warrant.

■ Admission of testimony concerning a warrant can rise to plain error. *Mullins,* 104 P.3d at 301. In *Mullins,* the division stated that "where probable cause to arrest or search is not at issue, it is improper to present to the jury evidence about obtaining an arrest or search warrant" because it is irrelevant. *Id.*

In *Mullins,* the division reasoned that the evidence against the defendant was not overwhelming, and that the testimony about the warrant, together with two of the prosecutor's statements during closing argument,

impaired the defendant's ability to raise self-defense. Thus, the division concluded that the circumstances there rose to plain error.

Here, like in *Mullins*, probable cause was not at issue during trial, when these statements were admitted. Nonetheless, the testimony about the search warrant was minimal, providing little detail about the extensive process of applying for and obtaining a search warrant. *See People v. Ornelas*, 937 P.2d 867, 872 (Colo.App.1996) (holding that a witness's fleeting reference to the search warrant signed by a judge was not plain error); *People v. Renfro*, 117 P.3d 43, 48 (Colo.App.2004) (same). Finally, the prosecutor did not reference the statements in closing.

Thus, after review of the entire record, which contains significant evidence of Mapps's guilt, we conclude that any error by the trial court in admitting the statements about the search warrant was not plain error.

The judgment of conviction is affirmed.

Judge ROMÁN and Judge LICHTENSTEIN concur.