Peter A. KAISER and Martha Rhoades,
Plaintiffs–Appellants,

v.

Thomas LIEF, Does I and II,
Defendants–Appellees.

No. 87–1984.

United States Court of Appeals,
Tenth Circuit.

May 10, 1989.

Bernard Q. Phelan, Cheyenne, Wyo., for plaintiffs-appellants.

Elizabeth Z. Smith of Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, Wyo., for defendants-appellees.

Before ANDERSON and BRORBY, Circuit Judges, and O'CONNOR, District Judge.*

EARL E. O'CONNOR, District Judge.

Peter A. Kaiser brought this action against Thomas Lief under 42 U.S.C. §§ 1983 and 1985, alleging that a search of his home was unreasonably conducted pursuant to an invalid warrant. The district court entered summary judgment for Lief on Kaiser's section 1985 claim. With respect to his section 1983 claim, the district court granted summary judgment in Lief's favor as to the validity of the warrant and the propriety of the seizure of the furs. A jury found that the search was conducted in a reasonable manner, and judgment was rendered for Lief on that issue. Kaiser appeals only from the adverse rulings relating to his section 1983 claim. We affirm.

The pertinent facts are as follows. Lief is a detective lieutenant in the Newcastle, Wyoming, Police Department. In August 1985, the department conducted an undercover drug investigation which focused in part on Kaiser and his live-in girlfriend,

* Honorable Earl E. O'Connor, Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

Martha Rhoades. The investigation utilized a confidential informant, Debra K. Hahn. On September 4, 1985, Hahn informed Lief that she and Rhoades were planning to travel to South Dakota to purchase cocaine, and Lief wired Hahn with a microphone and a transmitter. On the trip, Rhoades bought and transported back to Newcastle a small amount of cocaine. On September 5, 1985, Lief again wired Hahn and gave her marked money after she told him of a phone conversation which she had with Rhoades regarding purchasing cocaine. Hahn went to Kaiser's residence and, at Rhoades' request, entered a vehicle with Rhoades and an unidentified woman. Rhoades told Hahn that the woman would sell her a quarter ounce of cocaine for $770; Hahn agreed to the terms, and the money and a bag containing nine packets of cocaine were exchanged. Rhoades and Hahn then exited the vehicle and entered Kaiser's residence. Inside, Kaiser, whom Hahn observed seated on a sofa with a substance appearing to be cocaine on a table in front of him, asked to buy a gram of the cocaine that Hahn had just purchased. Hahn agreed, and two of the nine packets of cocaine were placed on the table in front of Kaiser.

Rhoades then drove Hahn back to her hotel, where she met with Lief. Lief field-tested one of the remaining seven packets; the substance tested positive for cocaine. Lief radioed other officers, who stopped and arrested Rhoades.

Lief and Hahn then met with the county attorney, who prepared a criminal complaint and arrest warrant for Kaiser. The complaint stated that Lief had wired a confidential informant who delivered cocaine to Kaiser at his residence, and that the transaction was recorded on audio-tape. The complaint was signed under oath by Lief and presented to a magistrate, who issued a warrant for Kaiser's arrest. On September 5, 1985, Kaiser was arrested for possession of cocaine.

The next day, September 6, 1985, Lief and Hahn met with the special prosecutor appointed to the case. An affidavit for a search warrant for the Kaiser residence was prepared by the special prosecutor and signed by Lief. In pertinent part, the affidavit stated that:

On September 5, 1985, a confidential informant received from Martha Rose, a/k/a Martha Rhodes [sic], nine packets of a white substance represented to be Cocaine. Cocaine is a derivitive [sic] of coco [sic] leaves and is a schedule two controlled substance in accordance with W.S. 535–7–1016(b)(IV). The delivery of this substance took place in the residence of Peter A. Kaiser in violation of the laws in the State of Wyoming. When confidential informant and Martha Rose entered the Peter A. Kaiser residence there was another quantity of white powder substance on a table in front of Peter A. Kaiser represented and believed by the confidential informant to be Cocaine.

Two of the nine packets delivered to confidential informant were left in the described premises as Martha Rose and confidential informant left the residence. A subsequent field test of the substance remaining in the possession of the confidential informant proved positive for Cocaine. For that reason your affiant believes that the two packets remaining on those premises are also Cocaine. Your affiant believes that the two packets are still located in or about the described premises.

Thereupon, a search warrant was issued by the same magistrate who issued the warrant for Kaiser's arrest.

Pursuant to the search warrant, Kaiser's residence was searched on September 7, 1985. During the search, Lief recalled that Rhoades told him earlier in the year that stolen furs were hidden in a compartment in a bedroom closet in Kaiser's residence. Thinking that drugs might be found in the compartment, Lief searched it and found furs matching the description provided by Rhoades with their identification numbers blocked out. Lief, believing the furs were stolen, seized them.

The primary issues raised by Kaiser on appeal are whether the search was pursuant to a valid warrant, whether the furs were properly seized, and whether the district court properly instructed the jury as to Lief's liability for the acts of others.

## I. *The Warrant.*

■ Initially, Kaiser contends that the affidavit supporting the search warrant contained misstatements of fact. Assuming that Kaiser's assertion is correct, the misstatements do not invalidate the warrant because they are not material, *see United States v. Hampton*, 633 F.2d 927, 929 (10th Cir.1980), *cert. denied*, 449 U.S. 1128, 101 S.Ct. 950, 67 L.Ed.2d 116 (1981), and because the affidavit included sufficient accurate statements to support the issuance of the warrant. *See United States v. Riccio*, 726 F.2d 638, 641 (10th Cir.1984) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978)). Thus, the warrant was validly issued in spite of any misstatements.

■ Kaiser further asserts that the warrant was invalid because the supporting affidavit was based on unreliable hearsay. Under the standards of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983),

> [t]he task of the issuing magistrate is simply to make a practical, common-sense determination whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States*, 362 U.S. [257, 271 [80 S.Ct. 725, 736, 4 L.Ed.2d 697] (1960) ].

*Illinois v. Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332.

The affidavit underlying the search warrant for Kaiser's residence established probable cause if the confidential informant's version of the facts is accepted as accurate. This raises the question of whether the magistrate had before him sufficient information to indicate that the confidential informant was reliable. The district court concluded that the affidavit itself sufficiently established the confidential informant's credibility. This determination was based on the facts that (1) the confidential informant's knowledge of the events described in the affidavit was first-hand, and (2) the confidential informant's veracity was supported by a field test which indicated that the substance in her possession was, as she stated, cocaine.

The district court correctly held that the above-mentioned facts gave the magistrate a substantial basis to conclude that probable cause existed. Moreover, the magistrate had before him other information on which he could rely in making the probable cause determination.

This circuit has held that a magistrate is not constrained by niggardly limitations on his use of common sense, *see United States v. Wood*, 695 F.2d 459, 464 (10th Cir.1982), and that an insufficient affidavit may be rehabilitated by testimony before the issuing magistrate. *See Leeper v. United States*, 446 F.2d 281, 286 (10th Cir. 1971), *cert. denied*, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1972). Other circuits have addressed the propriety of a magistrate considering facts beyond those included in the affidavit in making a probable cause determination.

The Eleventh Circuit has made the broadest pronouncements regarding a magistrate's consideration of information beyond that contained in the supporting affidavit, stating that "[p]robable cause may be based on facts within the magistrate's knowledge and of which he has reasonably trustworthy information." *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983) (citing *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982)), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). However, in neither *Slay* nor *Strauss* did the magistrate have before him facts beyond those contained in the affidavit. The Ninth Circuit, although repeatedly stating that the validity of a warrant depends on the sufficiency of the facts contained within the four corners of the affidavit, *see, e.g., United States v. Taylor*, 716 F.2d 701, 705 (9th Cir.1983); *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir.1978); *United States v. Dam-*

*itz,* 495 F.2d 50, 54 (9th Cir.1974), has held that in issuing a search warrant, a magistrate may consider facts contained in a contemporaneously presented affidavit for an arrest warrant. *See United States v. Fogarty,* 663 F.2d 928 (9th Cir.1981). The court stated:

> We have been cited no restriction which limits a magistrate to the four corners of a single affidavit when facts are presented simultaneously in two related affidavits seeking two warrants [(an arrest warrant and a search warrant)].
>
> In this case, Fogarty complains that some of the facts necessary to constitute probable cause for the search warrant were contained in the affidavit offered in support of the arrest warrant. We are satisfied that each affidavit was sufficient, standing alone, to present probable cause, but even if each had not been sufficient, of itself, we can think of no Fourth Amendment reason why the magistrate had to read either affidavit with tunnel vision.

*Id.* at 929–30. Similarly, the Sixth Circuit has held that in issuing a search warrant, a magistrate may rely on facts included in a simultaneously presented affidavit for a second search warrant. *See United States v. Dudek,* 560 F.2d 1288, 1292–93 (6th Cir. 1977), *cert. denied,* 434 U.S. 1037, 98 S.Ct. 774, 54 L.Ed.2d 786 (1978); *United States v. Nolan,* 413 F.2d 850, 853 (6th Cir.1969).

We believe that in the instant action, the magistrate could rely on the facts contained in the complaint on which the arrest warrant was based in making the determination on probable cause to issue the search warrant. All of the information on which the magistrate relied was included in sworn documents. Further, although the complaint and the affidavit were not simultaneously presented to the magistrate, only a day separated their presentation; therefore, the facts included in the complaint were not stale.

The complaint underlying the arrest warrant stated that the confidential informant was wired when she delivered cocaine to Kaiser's residence, and that a tape recording memorialized the transaction. The magistrate may use his common sense to infer that the recording verified that co- caine was delivered as stated in the complaint. Thus, the magistrate had before him sufficient indications of the veracity of the confidential informant, and the district court properly entered summary judgment as to the validity of the warrant.

## II. *The Seizure.*

■ Kaiser contends that Lief improperly seized the furs, which were not particularly described in the warrant. We review de novo the issue of whether the furs were properly seized under the plain view doctrine. *See United States v. Disla,* 805 F.2d 1340, 1346 (9th Cir.1986) (de novo review of the applicability of the plain view doctrine, which involves a mixed question of law and fact); *see also R–G Denver v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469, 1471 (10th Cir.1986) (de novo review of summary judgment orders). Nonetheless, we adopt the reasoning of the district court, which properly granted summary judgment in favor of Lief because the furs fall within the plain view exception to the warrant requirement. In short, the plain view doctrine applies because (1) Lief was properly searching the compartment, which could have contained drugs, (2) Lief did not remember or intend to seize the furs when he applied for the warrant, and (3) there was immediate probable cause to believe that the furs were stolen because of Rhoades' statements to Lief and the marked-out identification numbers. *See Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1982) (plurality opinion of Rehnquist, J., joined by Burger, C.J., and White and O'Connor, JJ., explaining the requirements of the plain view doctrine as set forth in *Coolidge v. New Hampshire,* 403 U.S. 443, 465–70, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) (plurality opinion of Stewart, J., joined by Douglas, Brennan, and Marshall, JJ.)).

## III. *The Instruction.*

■ At trial on the issue of the reasonableness of the search, the district court refused Kaiser's request to instruct the jury as follows:

> When the acts of a member of a joint enterprise causes [sic] injury to a third person, such acts are imputable to the

other members of the enterprise and all may be held liable for the injury.

A joint enterprise is a contractual relationship of mutual agency employed to represent merely a unity between persons in the pursuit of a common purpose, as a result of which the acts of one participant may be imputed to another.

If you find that defendant Lief participated in a joint enterprise with others, the acts of others will be imputed to defendant Lief.

Under Kaiser's proposed instruction, Lief could have been liable for the acts of other officers even if he had not authorized, supervised, caused, or participated in the acts. Such is not the law, as this circuit has held that the doctrine of respondeat superior cannot be applied to hold liable under section 1983 an officer who has no affirmative link with the constitutional violation. *See Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir.1976). Thus, the district court properly refused to instruct the jury as Kaiser requested.

The judgment of the district court is AFFIRMED.