The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Dolores Elaine KIRK, Defendant–
Appellee.

No. 04SA206.

Supreme Court of Colorado,
En Banc.

Jan. 10, 2005.

Robert S. Grant, District Attorney Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Plaintiff–Appellant.

Paul Grant, Englewood, for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

Plaintiff–Appellant, the People of the State of Colorado, bring an interlocutory appeal of the trial court's suppression of evidence it planned to offer in a criminal prosecution against Defendant–Appellee, Dolores Kirk. Since the evidence was obtained in an·objectively reasonable search incident to an arrest,

no constitutional violation exists. Therefore, we reverse the trial court's suppression order.

## I.  Facts and Proceedings Below

On May 21, 2003, Officer Karl Scherck of the Westminster Police Department stopped a vehicle with a "shattered" windshield in the right .traffic lane of Federal Boulevard. The driver, Joshua Wilson, did not own the vehicle, and he could not produce either his driver's license or a vehicle insurance card.

Through the Colorado Department of Motor .Vehicles database, Officer Scherck was able to verify that Wilson did hold a valid driver's license. However, since Wilson had not produced proof of insurance, and the existence of insurance could not be verified in the state database, Officer Scherck issued Wilson a summons for operating a motor vehicle without proof of insurance. Officer Scherck also issued an impound order and requested a tow truck because "[t]he vehicle had no insurance. I just couldn't let that vehicle drive away, for liability purposes." Around this time, Officer Scott Hopkins arrived to offer back-up assistance. After Wilson signed the lack of insurance summons, Officer Scherck sought and received consent to search Wilson's person for drugs, weapons, or other contraband. A baggie of suspected methamphetamine was discovered in Wilson's front pants pocket. Officer Scherck arrested Wilson and placed him in the squad car.

As he later testified, Officer Scherck then had reason to suspect there might be additional evidence of criminal activity: "I took dope off the driver and, you know, chances are pretty good there was more dope inside the car." Nonetheless, Officer Scherck merely approached the vehicle and addressed Defendant, who was still sitting in the front passenger seat. He explained that the vehicle was going to be impounded because Wilson was under arrest, and no one had produced proof of insurance. Defendant became "frantic" and asked if she could search through the vehicle which apparently was loaded with a myriad of her personal belongings. She told both officers that the vehicle was insured and her card was somewhere in

the vehicle. Officer Scherck then allowed Defendant to search the vehicle.

Defendant rummaged through the vehicle for several minutes. Then, just as the tow truck started backing up toward the vehicle, Defendant testified, she found her insurance card. Officer Scherck, however, testified that he did not recall whether Defendant ultimately had produced proof of insurance. Still, he explained that even if she had found her insurance card, it may have been too late to avoid impoundment. And, according to Officer Scherck, proof of insurance "was not produced before [the tow company] had [the vehicle] on their flatbed and they signed the impound sheet." Officer Hopkins agreed, testifying that "[t]he tow arrived and she was unable to find proof of insurance."

Officers Scherck and Hopkins then conducted the requisite inventory search of the vehicle's contents in accordance with Westminster Police Department impoundment procedure. A black, backpack-style purse was located on the floorboard of the front passenger seat where Defendant had been sitting. When asked if it was hers, Defendant said yes and that some of the contents were hers as well. Inside the purse, Officer Scherck found a baggie of suspected methamphetamine. He then placed Defendant under arrest.

Defendant was charged with unlawful possession of a controlled substance on July 25, 2003. Before trial, she sought suppression of the methamphetamine found in her purse and any statements made to the officers during their search of the vehicle, which she argued was unreasonable under the Fourth Amendment to the United States Constitution. The trial court held a suppression hearing, at which the People called former Officer Scherck and Officer Hopkins.[1] Both testified that Defendant was unable to produce proof of insurance before they began searching the vehicle, and Officer Scherck explained that he ordered impoundment in accordance with Westminster Police Department policy. Defendant then took the stand and testified that she tried to show Officer

Scherck her insurance card just as the tow truck was approaching the vehicle.

At the close of the evidence, the prosecuting attorney chose not to make a closing argument, instead reserving his argument for rebuttal. Defendant's counsel then argued that the inventory search was unreasonable because the underlying impoundment was unauthorized. Westminster Police Department policy, according to the defense, vested too much discretion in the police officer; therefore, it could not be characterized as a standardized operating procedure.

On rebuttal, the prosecuting attorney sought to argue that the search was reasonable because it was a search incident to Wilson's arrest. Defendant's counsel objected, pointing out that this position was beyond the scope of his closing argument. Although the trial judge agreed with the defense and stated that he would not consider whether the search was reasonable as incident to Wilson's arrest in reaching his suppression ruling, the trial judge allowed the prosecuting attorney to make a record of this argument for appeal. After doing so, the prosecuting attorney finished his rebuttal by arguing that Officer Scherck fully complied with the standardized Westminster Police Department's policy governing vehicle impoundment.

Despite its admonishment that it would not consider whether the search was reasonable as incident to Wilson's lawful arrest, the trial judge later stated:

> [The prosecuting attorney] would ask the Court to believe that that's what this search was, that it was incident to the arrest of Mr. Wilson. The Court respectfully disagrees. The search was done based upon an impound order. The Court finds that the impound order was done prior to anyone talking to the owner of the car.

After making further findings, the trial court then concluded that since the vehicle actually was insured at the time Officer Scherck issued the impound order, Defendant's failure to produce proof of insurance was insufficient

---

1. Mr. Scherck is no longer employed by the Westminster Police Department. For clarity, he is referred to as "Officer" Scherck throughout this opinion.

to support the vehicle's impoundment. As the impound order was unauthorized, the inventory search could not be incident to it and therefore, was unreasonable. Accordingly, the trial court suppressed admission of the suspected methamphetamine discovered in Defendant's purse as well as any statements she made to the police officers that were incident to the unreasonable search. The People now appeal, asking us to reverse this suppression of evidence.

## II. Standard of Review

■ When reviewing a suppression order, we must determine whether the trial court's factual findings, though entitled to deference, *e.g., People v. Hardrick,* 60 P.3d 264, 266 (Colo.2002), "are adequately supported by competent evidence in the record." *People v. Jordan,* 891 P.2d 1010, 1015 (Colo. 1995) (emphasis omitted) (citing *People v. LaFrankie,* 858 P.2d 702, 706 (Colo.1993)). We also review de novo whether the trial court applied the correct legal standard, considering the totality of the circumstances. *E.g., People v. Syrie,* 101 P.3d 219, 221–22 (Colo.2004). Moreover, " '[w]hen ... the controlling facts are undisputed, the legal effect of those facts constitutes a question of law.' " *People v. D.F.,* 933 P.2d 9, 15 (Colo. 1997) (quoting *Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580, 583–84 (Colo.1995)).

■ Thus, we essentially examine the " 'interrelationship between the evidentiary facts of record, the findings of the trial court, and the applicable legal standards in review of the lower court's conclusion of law.' " *Syrie,* 101 P.3d at 221–22 (quoting *D.F.,* 933 P.2d at 13). In addition, we will correct conclusions of constitutional law that are either inconsistent with or unsupported by evidentiary findings, as well as any applications of erroneous legal standards. *E.g., People v. Miranda–Olivas,* 41 P.3d 658, 661 (Colo. 2001). We make this correction freely "where the record below reveals no conflicting evidence regarding the details of the encounter" because "remand is unnecessary where the appellate court can apply the correct legal standard." *Id.* (citing *People v. Johnson,* 865 P.2d 836, 840 (Colo.1994)).

## III. Analysis

■ Neither the People nor Defendant challenges the trial court's factual findings in this case, and we agree they are adequately supported by competent evidence in the record. Thus, in reviewing the suppression order, we only need determine whether the trial court applied the correct legal standard and made proper conclusions of constitutional law under the totality of the circumstances. We conclude that it did not.

Instead, we hold that Officers Scherck and Hopkins' search of the vehicle, including Defendant's purse located within, was reasonable as a valid search incident to Wilson's arrest. Accordingly, the trial court's suppression of the fruits of this search was erroneous.

■ As a preliminary matter, we note that although the People did not raise the search incident to arrest argument until rebuttal, we do not agree with Defendant that it should not be considered on appeal. Suppression for a procedural flaw in argument does not serve the purpose of the exclusionary rule, which is solely to deter police misconduct, not prosecutorial error. *See People v. Bakari,* 780 P.2d 1089, 1091 (Colo.1989) ("Illegal police searches and district attorney preparedness are unrelated."); *People v. Grady,* 755 P.2d 1211, 1218 (Colo.1988) (since granting suppression is tantamount to dismissing charges, judge's limited discretion to do so was exceeded where prosecutor merely failed to file answer brief). In addition, there is no doubt that on appeal, Defendant has had a full and fair opportunity to rebut the People's argument that the search was reasonable as a valid search incident to Wilson's arrest. Therefore, we now examine the constitutional law regarding warrantless vehicle searches incident to lawful arrests.

■ The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Similarly, Article II, Section 7 of the Colorado Constitution guarantees that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and sei-

zures." When performed by a government official, a warrantless search is "per se unreasonable unless it falls under a 'specifically established and well delineated exception.'" *People v. Daverin*, 967 P.2d 629, 631 (Colo. 1998) (quoting *People v. Savedra*, 907 P.2d 596, 598 (Colo.1995)).

An established exception to the warrant requirement is where a search is conducted incident to a lawful arrest. *E.g., Daverin*, 967 P.2d at 632 (citing *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). This search may include the passenger compartment of a vehicle where it is incident to a lawful arrest of an occupant of that vehicle. *E.g., Daverin*, 967 P.2d at 632 (citing *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (officer may search any containers within passenger compartment of vehicle, either open or closed and regardless of whether items are in plain view)). Two purposes justify a warrantless search incident to a lawful arrest: one, to ensure the safety of the arresting officer, and two, to preserve easily concealed or destructible evidence. *E.g., Daverin*, 967 P.2d at 632 (citing *Savedra*, 907 P.2d at 599–600).

The authority to search a vehicle's passenger compartment incident to the arrest of an occupant is automatic and does not depend on the facts of a particular case. *People v. H.J.*, 931 P.2d 1177, 1183 (Colo. 1997) (citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). Thus, the passenger compartment may be searched after the suspect has been removed from the vehicle, even when the suspect is away from the vehicle and safely within police custody at the time of the search. *Daverin*, 967 P.2d at 632 (citing *H.J.*, 931 P.2d at 1183); *Savedra*, 907 P.2d at 598 n. 1 (citing federal courts of appeals cases). Furthermore, a police officer may search the belongings of a passenger after the vehicle's driver has been arrested if the items are in the vehicle when the search is made. *People v. McMillon*, 892 P.2d 879,

883 (Colo.1995) (citing *Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, and several subsequent state and federal cases).

Moreover, although relevant for evidentiary purposes, *see People v. Rodriguez*, 945 P.2d 1351, 1360 (Colo.1997), "an officer's subjective intent is not dispositive" of search validity, *Daverin*, 967 P.2d at 633. "'What is determinative is whether the purpose of the intrusion was objectively reasonable in light of the circumstances confronting the officer at the time of the search.'" *People v. Altman*, 938 P.2d 142, 146 (Colo.1997) (quoted in *Daverin*, 967 P.2d at 633); *see also Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because officers' subjective intent is illegitimate).

In this case, the trial court's uncontested findings of fact included the determination that Officer Scherck lawfully arrested Wilson for possession of suspected methamphetamine. Since Wilson was an occupant of the vehicle, authority to search the passenger compartment arose automatically. *See H.J.*, 931 P.2d at 1183. The fact that Wilson already had been removed from the vehicle does not qualify this authority. *See Daverin*, 967 P.2d at 632; *Savedra*, 907 P.2d at 598 n. 1. Moreover, this search properly included Defendant's purse-backpack as it was still in the vehicle when Officer Scherck commenced the search. *See McMillon*, 892 P.2d at 883. Despite Defendant's contrary assertion, Officer Scherck's subjective intent is not dispositive. *See Daverin*, 967 P.2d at 633. Thus, even if unreasonable as an intended inventory search, Officer Scherck's search of Defendant's purse was objectively reasonable as a search incident to Wilson's lawful arrest.[2] *See Altman*, 938 P.2d at 146.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's suppression of evidence and re-

---

2. Due to the reasonableness of the search incident to Wilson's arrest, there is no need to review suppression under an inventory search theory. Accordingly, we do not decide whether

Officers Scherck and Hopkins had authority to conduct an inventory search of the vehicle pursuant to the impoundment order.

mand for further proceedings consistent with this opinion.