The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

James Andres PACHECO,
Defendant–Appellee.

No. 06SA132.

Supreme Court of Colorado,
En Banc.

Oct. 10, 2006.

Bill Thiebaut, District Attorney, Tenth Judicial District, Anthony Marzavas, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Darol C. Biddle, Pueblo, Colorado, Attorney for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

In this interlocutory appeal, the People of the State of Colorado challenge the trial court's order suppressing evidence obtained by the police pursuant to a search warrant. We affirm the trial court because the affidavit supporting the search warrant lacks probable cause and the good faith exception to the exclusionary rule does not apply.

## I. Facts and Procedural History

James Pacheco, the Defendant–Appellee, has been charged with Possession of a Controlled Substance—Schedule II (Cocaine) and Possession with Intent to Distribute a Controlled Substance—Schedule II (Cocaine). The evidence leading to Defendant's arrest was discovered during a July 21, 2005, search of Defendant's person and silver Ford Taurus. Detective Brandon Colbert of the Pueblo Police Department ("Department"), along with other police officers, executed the search pursuant to a search warrant issued on July 14, 2005.

Detective Colbert applied for the search warrant on July 14, 2005, and provided the magistrate with a supporting affidavit. The affidavit reported the following: (1) on March 29, 1999, the Department received anonymous information that "James Pacheco" was selling cocaine and heroin, (2) on April 5, 1999, the Department received anonymous information that "James Pacheco" was selling large quantities of heroin, and (3) on April 23, 1999, the Department received anonymous information that "James Pacheco" was possibly selling illegal drugs from his residence. On April 26, 2005, six years later, a confidential informant contacted the Department and related that "Jimmy Pacheco" was selling illegal drugs only from vehicles. The affidavit did not elaborate on the identity of the informants, did not explain how the various informants obtained their information, and did not link "James Pacheco" with "Jimmy Pacheco."

According to the affidavit, a "Reliable Confidential Informant" ("Informant") contacted Detective Colbert within fortyeight hours prior to Detective Colbert applying for the search warrant. Informant stated that James Pacheco was selling cocaine only from vehicles and that Pacheco changed vehicles daily in order to evade law enforcement. Informant further reported that Pacheco and Informant had personal contact in a vehicle driven by Pacheco. During this encounter, Informant observed cocaine in the vehicle that was packaged for distribution and Pacheco stated he had additional quantities of cocaine for sale. The police showed Informant a picture of Defendant. Informant identified Defendant as the same James Pacheco that Informant had described.

The affidavit explained that Informant previously provided the Department with information leading to the seizure of drugs and the filing of felony charges against one known drug dealer. Informant was further described as having extensive knowledge about the packaging, use, and sale of cocaine. Finally, Detective Colbert stated in the affidavit that, through surveillance, he was able to confirm Defendant frequently drives dif-

ferent vehicles throughout the week. The affidavit did not describe the time frame over which this surveillance occurred and the type of vehicles driven by Defendant.

Based on the foregoing information, the magistrate issued a search warrant for Defendant and "[a]ny vehicle associated with [Defendant] during the execution of this search warrant, regardless of whether [Defendant] is the driver or passenger of said vehicle." A search of Defendant and his silver Ford Taurus occurred on July 21, 2005, pursuant to the warrant. Defendant moved the trial court to suppress all tangible evidence obtained in the search, arguing in part that the affidavit failed to establish probable cause. After a hearing on the matter the trial court granted the motion, finding that the affidavit was a "bare bones" affidavit failing to establish probable cause to issue a search warrant. The trial court further found that the good faith exception to the exclusionary rule was inapplicable.

At issue in this interlocutory appeal is whether the affidavit contained sufficient information to establish probable cause for issuing the search warrant and, if not, whether the good faith exception to the exclusionary rule applies.

## II. Standard of Review

When reviewing a suppression order, we afford the trial court's factual findings deference and will not overturn those findings if they are supported by competent evidence in the record. *People v. Syrie*, 101 P.3d 219, 222 (Colo.2004). The trial court's legal conclusions, however, are subject to de novo review and will be reversed "if the court applied an erroneous legal standard or came to a conclusion of constitutional law that is inconsistent with or unsupported by the factual findings." *Id.* The trial court's legal conclusions are evaluated under the totality of the circumstances. *Id.* Because there are no factual disputes on this appeal, we need only determine whether the trial court applied the correct legal standards and reached proper conclusions of constitutional law under the totality of the circumstances. *See People v. Kirk*, 103 P.3d 918, 921 (Colo.2005).

## III. Analysis

### A. Probable Cause

Both the United States and Colorado Constitutions prohibit the issuance of a search warrant except upon a showing of probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized. U.S. Const. amend. IV; Colo. Const. art. II, § 7. Probable cause must be established within the four corners of the affidavit in support of a search warrant. *People v. Randolph*, 4 P.3d 477, 481 (Colo.2000). The affidavit establishes probable cause if the affidavit contains "sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Miller*, 75 P.3d 1108, 1112 (Colo.2003). In determining whether probable cause exists a judge must look to the totality of the circumstances, and the inquiry is not governed by rigid legal rules. *E.g., People v. Altman*, 960 P.2d 1164, 1167 (Colo.1998); *People v. Turcotte–Schaeffer*, 843 P.2d 658, 660 (Colo.1993) (explaining that Colorado has adopted the totality of the circumstances test announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Judges must make a "practical, commonsense decision whether a fair probability exists that a search of a particular place will reveal contraband or evidence of a crime." *Altman*, 960 P.2d at 1167. A court reviewing the validity of a search warrant does not engage in de novo review but rather examines whether the magistrate had a substantial basis for concluding that probable cause existed. *Randolph*, 4 P.3d at 481.

The first issue we must address, therefore, is whether the trial court correctly concluded that Detective Colbert's affidavit failed to provide a substantial basis for the magistrate to find probable cause. We hold that the trial court was correct in this conclusion. Where, as here, an affidavit is based on an informer's tip, the totality of the circumstances inquiry looks to all indicia of reliability—including the informer's veracity and the basis of his knowledge, the amount of detail provided by the informer, and whether

the information provided was current. *Randolph*, 4 P.3d at 481–82; *see also People v. Leftwich*, 869 P.2d 1260, 1266 (Colo.1994).

 The affidavit in this case fails all indicia of reliability. Under our case law, probable cause requires there be current information of criminal activity or contraband located at the place to be searched. *Miller*, 75 P.3d at 1115 (holding that month old information of methamphetamine manufacture at the defendant's house was stale); *Randolph*, 4 P.3d at 482 (holding two months old information of methamphetamine use to be stale). Here, none of the anonymous tips received by the Department in 1999 concerned Defendant selling illegal drugs from vehicles; even if they did, information that is six years old is clearly stale and cannot establish probable cause. The anonymous tip received on April 26, 2005, that "Jimmy Pacheco" was selling illegal drugs only from vehicles, was two and a half months old when the application for the search warrant was filed. The affidavit contained no details regarding how the anonymous informant gained this information and did not provide facts linking "Jimmy Pacheco" to Defendant. Such information, even if not stale, does not alone rise to the level of probable cause. This leaves only the report of Informant, which was conveyed within forty-eight hours prior to Detective Colbert applying for the warrant. Although this information was current, Informant's veracity and basis of knowledge were not sufficiently described in the affidavit.

 We have previously held that bare assertions of knowledge are insufficient to establish the basis of an informer's knowledge. *Leftwich*, 869 P.2d at 1266. An affidavit must instead contain enough facts "to allow a magistrate to determine how the informant obtained the information on which the affiant relies." *Id.* The affidavit in this case contained no information regarding how Informant knew that (1) Defendant sold illegal drugs from vehicles and (2) Defendant frequently changed vehicles to evade the police. Although Informant and Defendant reportedly "had contact," the affidavit's description of this encounter did not contain details as to where, when, how, or why the

meeting occurred. With regard to Informant's veracity, the affidavit simply stated that Informant had provided the Department with reliable information in the past. These statements were conclusory, however, and conveyed no additional information upon which the magistrate could independently determine Informant's veracity or reliability.

 Where an informant's statements do not alone rise to the level of probable cause, probable cause may be established by independent police corroboration of the information. *Randolph*, 4 P.3d at 482; *Leftwich*, 869 P.2d at 1267–68. If only non-criminal activity is corroborated, the question whether probable cause exists focuses on "the degree of suspicion that attaches to [the] particular types of corroborated non-criminal acts and whether the informant provides details which are not easily obtained." *Leftwich*, 869 P.2d at 1268. In this case, Detective Colbert only confirmed that Defendant drives different vehicles throughout the week. Detective Colbert's affidavit did not describe the time frame of his surveillance, the number of vehicles in which Defendant was seen, or the type of vehicles Defendant drove. At the suppression hearing, Detective Colbert only stated that Defendant was seen driving the silver Ford Taurus and "a little red car." Driving two different cars during an unspecified time period is neither criminal activity nor inherently suspicious. Furthermore, this information does not include details that would be difficult to obtain. Corroboration of this information therefore does not provide probable cause for the search warrant, and Detective Colbert did not confirm any of the other information provided by Informant.

In sum, the trial court correctly concluded that the affidavit failed to establish a substantial basis for finding probable cause existed.

### B. Good Faith Exception to Exclusionary Rule

 The normal penalty for executing a search warrant unsupported by probable cause is the suppression of all evidence gained in the search. *Randolph*, 4 P.3d at 483. The "good faith exception" to the exclu-

sionary rule applies to allow the evidence, however, where the officers executing the search operated under the objectively reasonable belief that the warrant was legitimate. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Randolph*, 4 P.3d at 483. The test for good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," taking into account all of the circumstances surrounding the issuance of the warrant. *Leon*, 468 U.S. at 922–23 n. 23, 104 S.Ct. 3405.

The Colorado General Assembly has also codified a good faith exception to the exclusionary rule. § 16–3–308(1), C.R.S. (2006). The Colorado statute creates a presumption that an officer acting pursuant to a warrant acted in good faith, but that presumption can be rebutted "if the officer failed to undertake the search in a good-faith belief that it was reasonable." *Randolph*, 4 P.3d at 483. We have previously ruled that the *Leon* "objectively reasonable" test and the statutory good faith test are substantially similar. *Leftwich*, 869 P.2d at 1272. The key inquiry under either *Leon* or the statute, therefore, is whether Detective Colbert acted in an objectively reasonable manner in relying on the search warrant.

The *Leon* court described four circumstances in which an officer could not reasonably rely on a warrant: (1) where the magistrate was misled by knowingly or recklessly false information; (2) where the magistrate wholly abandoned his or her judicial role; (3) where the warrant is so facially deficient that the executing officers cannot reasonably determine the particular place to be searched; and (4) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)); *see also Randolph*, 4 P.3d at 483–84. The fourth circumstance refers to a "bare bones" affidavit and is the situation at issue in this case. *Altman*, 960 P.2d at 1169.

An affidavit is termed bare bones if it contains "wholly conclusory statements devoid of facts from which a magistrate can independently determine probable cause." *Id.* at 1170. We have also described an affidavit as bare bones when it "contained only vague allegations speculating that the defendant engaged in illegal activity." *Randolph*, 4 P.3d at 482. The trial court below correctly held that this was a bare bones affidavit upon which no reasonable officer could rely. The affidavit's assertions were not supported by facts that could allow the magistrate to determine independently whether probable cause existed. *See* Section III.A, *supra*. The fact that Detective Colbert was the officer who both applied for and executed the warrant further bolsters the trial court's conclusion that reliance on the bare bones affidavit was not objectively reasonable. As we noted in *Randolph*:

> The officer who conducted the investigation and failed to corroborate the details provided by the informant was the same officer that prepared the deficient affidavit. . . . Therefore, the officer either knew, or should have known, that the warrant was lacking in probable cause, and it was not objectively reasonable for him to rely on it.

4 P.3d at 484.

The affidavit in this case was bare bones and therefore no reasonable officer could rely upon it in executing the search. As a consequence, the good faith exception to the exclusionary rule does not apply to shield the evidence obtained in the search.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order suppressing all tangible evidence obtained in the July 21, 2005, search of Defendant's person and silver Ford Taurus. The case is remanded for further proceedings consistent with this opinion.

Justice EID specially concurs and Justice COATS joins in the special concurrence.

Justice EID, specially concurring.

The majority holds that the trial court properly excluded the drug evidence because

the affidavit supporting the search warrant lacks probable cause and the good faith exception to the exclusionary rule does not apply. I find it unnecessary to reach the probable cause issue and would instead affirm on a more fundamental ground: the search warrant failed to state with particularity the place to be searched.

The warrant allowed police to search "[a]ny vehicle associated with [Defendant] during the execution of this search warrant, regardless of whether [Defendant] is the driver or passenger of said vehicle." A fundamental requirement of any search warrant is that it must state with particularity the "place to be searched." U.S. Const. amend. IV; Colo. Const. Art. II, § 7; *see People v. Del Alamo*, 624 P.2d 1304, 1306 (Colo.1981) (finding the particularity requirement satisfied where warrant described target vehicle such that no other vehicle could match the description). The warrant here is deficient in this regard. Indeed, a number of courts have found that warrants substantially similar to the one at issue here fail the particularity requirement. *See, e.g., Time Warner Entm't Co. v. Does*, 876 F.Supp. 407, 413 (E.D.N.Y.1994) (holding that a search warrant for "any vehicles in the possession, custody or control of Defendants at any location in New York where counterfeit or infringing merchandise bearing Plaintiff's copyrighted Designs and Trademarks is manufactured, distributed, sold, offered for sale and stored" did not satisfy the particularity requirement); *State v. Ingram*, 313 Or. 139, 831 P.2d 674, 677 (1992) (holding that a search warrant for "all vehicles determined to be associated with occupants of said premises" failed the particularity requirement because "officers executing it could invade privacy interests not intended by the magistrate to be invaded and could conduct searches not supported by probable cause"). *See generally* 2 Wayne R. LaFave, *Search & Seizure* § 4.5(d) (4th ed.2004) (noting that a search warrant for "all automobiles" is vulnerable to challenge on particularity grounds).

As the majority points out, according to Informant, Pacheco used multiple vehicles in his drug business in order to evade law enforcement. Maj. op. at 93. Yet Detective Colbert testified that Pacheco had only been seen driving two different vehicles: a silver Ford Taurus and a "little red car." *Id.* at 95. In other words, particular descriptions of the vehicles were available, but for some reason they were not incorporated into the warrant.

Because the warrant did not include any description of the targeted vehicles, "no reasonable officer would have relied upon" it. *People v. Randolph*, 4 P.3d 477, 483 (Colo. 2000). Therefore, "objective good faith is absent and the good faith exception offers no shelter." *Id.; see United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For these reasons, I specially concur.

I am authorized to state that Justice COATS joins in this special concurrence.