The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Julius Omega SCOTT, Defendant–Appellee.

No. 09SA225.

Supreme Court of Colorado, En Banc.

April 5, 2010.

Don S. Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Chad Ryan Oxman, Deputy Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

In this interlocutory appeal, we review the trial court's order granting Julius Scott's motion to suppress evidence collected under a search warrant related to criminal animal fighting under section 18–9–204, C.R.S. (2009). We reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

This matter concerns the exclusion of items seized under the second of three search warrants executed for Scott's residence. Suspecting Scott to be housing more than three dogs in violation of a Thornton

municipal code,[1] animal control officers for Adams County sought a warrant to search for and seize dogs on Scott's residence. Officer Feeney's affidavit supporting the first warrant indicated one of Scott's neighbors reported seeing five different pit bulls—one with scars on its face—in Scott's backyard, which he kept mostly covered with a large tarp. The neighbor also reported hearing a dog "crying." Another neighbor told officers that she had seen three pit bulls in the backyard the day before, and that "the owner [was] shuffling dogs around and keeping a female inside the house." From that neighbor's residence, officers were able to see into Scott's backyard and observed "several dog houses, some blue barrels used for dog houses, chains to secure[ ] the dogs[,] and food and water bowls." Officers did not see any dogs themselves. The magistrate concluded these alleged facts were sufficient to establish probable cause for a Thornton code violation and issued the requested warrant.

Having obtained the warrant, Officer Feeney along with other officers executed a search for dogs at Scott's home. The officers found three pit bulls in the backyard, three more isolated in individual cages in the garage, and another inside the house. All seven dogs were seized.[2]

In the course of seizing the dogs, the officers noticed other items they believed to be suggestive of dog-fighting activities. Officer Feeney directed Scott to wait outside while she obtained a warrant to further search the premises for instrumentalities of dog fighting. In her affidavit in support of her second warrant request, Officer Feeney described that the three dogs in Scott's garage had been discovered "inside dog crates," that a treadmill located in the garage had been modified with "wood built along the side and on top along with [two] chains used to hold a dog in," and that an officer who had entered the main house had "noticed supplements on the counter used to strengthen muscle tone." Finding these observations sufficient to establish probable cause to search Scott's house for instrumentalities related to dog fighting, the magistrate issued the second warrant.

Under this second warrant officers seized a number of items from Scott's home, including, among other things, the modified treadmill, several magazines and books regarding dog fighting, pedigree papers, a break stick (used to separate dogs during a fight), dog collars, surgical skin staplers, suture kits, syringes, supplements and antibiotics, salves used for treating wounded horses, and a computer which, at the time of the search, had internet windows minimized to the tool bar (but still visible) indicating recent visits to websites titled "Gamedog," "Pit Bulls," and "Online Pedigrees."

Subsequent to these seizures, a third warrant, supported by an affidavit recounting both searches, was sought for a search of the computer's contents. The third warrant was issued, and the computer's contents were investigated and catalogued.

Scott was then charged with animal fighting in violation of section 18–9–204, a class five felony. Scott moved to suppress any evidence seized under the three warrants. After hearing arguments and testimony from Officer Feeney concerning the matter, the trial court suppressed everything collected except the seven dogs and the modified treadmill. The trial court reasoned that the observations made by searching officers and recounted in the affidavits supporting the second warrant request did not suggest the dogs were kept for something other than pet purposes. The trial court noted that, although Officer Feeney was a trained expert concerning dog fighting, neither her experience nor the bases for her conclusions that Scott was involved in dog fighting and would possess instrumentalities related to that ac-

---

1. Thornton Municipal Code § 6–17(f) states, in pertinent part, "No person shall harbor or allow there to be more than a total of three dogs … per residential dwelling unit that they occupy." This section was often cited incorrectly in the record as "section 6–17(5)(b)(f)."

2. Unfortunately, the record does not include returns itemizing the seizures under the various warrants in this case. However, the failure to provide us with returns does not impede our review here where the facts as described are as stipulated by the parties in their briefs as well as commensurate with discussions at the suppression hearing.

tivity were contained within the affidavit for the second warrant. As such, the trial court concluded the officers had not established probable cause to search for those items. The trial court went on to conclude that neither the plain view nor the good faith exceptions to the exclusion rule would allow the improperly obtained items to be submitted into evidence. Having determined that Scott's computer had been illegally seized and so should be suppressed in its entirety, the trial court did not consider whether the search of the computer's contents was proper under the third warrant.

The People appealed the trial court's ruling suppressing items seized under the second warrant pursuant to C.A.R. 21 and we now reverse.

## II. Probable Cause and Standard of Review

■■■ The United States and Colorado Constitutions prohibit issuance of a search warrant without a showing of probable cause supported by oath or affidavit. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7. " 'Probable cause exists when an affidavit for a search warrant alleges facts sufficient to cause a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched.' " *People v. Randolph,* 4 P.3d 477, 481 (Colo.2000) (quoting *People v. Turcotte–Schaeffer,* 843 P.2d 658, 659–60 (Colo.1993)). Probable cause is determined by the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *People v. Pacheco,* 175 P.3d 91, 94 (Colo.2006). Under the Colorado Constitution, the facts supporting probable cause must be reduced to a writing, and so probable cause must be established within the four corners of the warrant or its supporting affidavit. *See* Colo. Const. art. II, § 7; *People v. Padilla,* 182 Colo. 101, 105, 511 P.2d 480, 482 (1973). However, the analysis is not governed by hypertechnical legal rules; rather, a judge must make a "practical, common-sense decision" as to whether there is a fair probability that a search will reveal contraband or evidence of a crime. *Pacheco,* 175 P.3d at 94; *see also People v. Crippen,* 223

P.3d 114, 117 (Colo.2010) (" '[P]robable cause' itself need not satisfy any rigid, hypertechnical requirements but is a 'practical, nontechnical conception,' involving common-sense conclusions about human behavior." (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983))).

■■■ When reviewing a suppression order, the trial court's factual findings are afforded deference while its legal conclusions are reviewed de novo. *See Pacheco,* 175 P.3d at 94. Absent a factual dispute, "we need only determine whether the trial court applied the correct legal standards and reached proper conclusions of constitutional law under the totality of the circumstances." *Id.* (citing *People v. Kirk,* 103 P.3d 918, 921 (Colo.2005)). Specifically, we must surmise whether the affidavit here "contained sufficient information to support a finding of probable cause to issue a valid search warrant." *Randolph,* 4 P.3d at 481. In doing so, we credit the magistrate's determination and assess whether the affidavit provided the magistrate with a substantial basis for concluding probable cause existed. *People v. Pate,* 878 P.2d 685, 690 (Colo.1994); *see also People v. Gutierrez,* 222 P.3d 925, 937 (Colo. 2009) ("In reviewing the validity of a search warrant, we accord a magistrate's probable-cause determination great deference, but that deference is not boundless." (internal quotations omitted)).

## III. Analysis

■■■ Scott challenged the second search warrant as having issued without probable cause. The trial court concluded the affidavit supporting the second warrant was insufficient to establish probable cause and granted his motion to suppress all items collected thereunder except for the modified treadmill found in the garage. After careful review, we conclude that the first and second affidavits can be read together, and that the constellation of facts set forth by the two affidavits provided the magistrate with a substantial basis from which to conclude that probable cause existed. *See People v. Staton,* 924 P.2d 127, 132 (Colo.1996) (indicating that, in certain circumstances, examination of the "four corners" of a warrant

nonetheless allows for the consideration of other documents presented to a magistrate).

Officer Feeney's second affidavit recounts several observations made by officers while executing the first search warrant. The affidavit sets forth that the officers found three dogs in Scott's backyard and three more "inside dog crates" in the garage. The affidavit further states that there was "a treadmill in the garage[ ] that had wood built along the side and on top[,] along with [two] chains used to hold a dog in." Officer Feeney indicated that the treadmill was a "place for conditioning a fighting dog prior to fights." Finally, the affidavit noted that another officer, who had entered Scott's house, had "noticed supplements on the counter used to strengthen muscle tone."

Although it was established at the suppression hearing that Officer Feeney had been trained regarding dog fighting and had extensive knowledge of dog fighting activities, her experience and the basis for her judgment that Scott was engaging in such activities were not included in the affidavit. The trial court properly determined that, without that information, the affidavit's statements that the officers' observations were related to dog fighting were merely conclusory and could not be relied upon to establish probable cause. *See, e.g., Randolph,* 4 P.3d at 482. Subtracting Officer Feeney's conclusory statements from the affidavit, the trial court concluded that the facts alleged in the second affidavit were insufficient to support a probable-cause determination that Scott was involved in dog fighting.

However, the second affidavit need not be read in a vacuum. It is common practice for a single warrant to be supported by multiple affidavits, or for an affidavit to incorporate by reference and then expand upon an earlier affidavit. *See, e.g., People v. Hakel,* 870 P.2d 1224 (Colo.1994) (reading two affidavits together as establishing probable cause where the second affidavit incorporated the first by reference); *Commonwealth v. Saleh,*

396 Mass. 406, 486 N.E.2d 706 (1985) (same); *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.3(d), at 516 (4th ed.2004) (stating that "[i]t is clear ... there is no inherent defect in utilizing multiple affidavits" for the purpose of probable-cause determinations). Here, though, the affidavit supporting the second warrant does not explicitly incorporate by reference the affidavit supporting the first warrant. Rather, the second affidavit only states that the officers made their observations while executing the first search warrant at Scott's residence.

Nonetheless, the observations sworn in the first affidavit clearly informed the ongoing investigation as well as the second warrant request. To force the two affidavits to be considered separately simply because Officer Feeney failed to explicitly incorporate the first affidavit into the second would be to impose hypertechnical requirements on an affidavit's form and constrain the common-sense approach that guides a magistrate's probable-cause determinations. *See Kaiser v. Lief,* 874 F.2d 732, 734–35 (10th Cir.1989) (discussing the propriety of magistrates considering information in documents before them other than the affidavit supporting a warrant request and stating that a magistrate should not be constrained by unnecessary limitations on his use of common sense); *United States v. Fogarty,* 663 F.2d 928, 930 (9th Cir.1981) ("[W]e can think of no Fourth Amendment reason why the magistrate had to read either affidavit with tunnel vision."). We will not so constrict a magistrate's analysis.[3]

■ Of course, probable cause cannot be established after the search. Before multiple affidavits can be read together for the purposes of a probable-cause analysis, "it is important that the record reflect ... that the issuing judge had before him all ... documents in making his determination of probable cause to issue the warrant." *People v. Campbell,* 678 P.2d 1035, 1040 (Colo.App.

---

**3.** *See also United States v. Mfrs. Nat. Bank of Detroit,* 536 F.2d 699, 702 (6th Cir.1976) (holding that the magistrate was entitled to read together two warrants sought on consecutive days where both warrants referred to the same investigation and similarly implicated the defendant in criminal activities, and where the second warrant referred to the first even though it did not explicitly incorporate it).

1983); *see also* 2 LaFave, *Search and Seizure* § 4.3(d), at 518 (noting that where the facts "establish[ ] quite clearly that all of the documents were before and considered by the magistrate, even if for a slightly different purpose," courts commonly allow the documents to be read together to establish probable cause).[4] This requirement is easily met here where the same magistrate reviewed and signed both the first and second affidavit within hours of each other. It is only sensible that the magistrate could consider the information sworn to him earlier the same day by the same officer when making his probable-cause determination for the second warrant request in an ongoing investigation concerning closely related activities. *See Ventresca*, 380 U.S. at 108, 85 S.Ct. 741 ("[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract.").

■ Considering the affidavits together, we conclude there were sufficient facts to establish probable cause for the issuance of the second warrant. The affidavits state that Scott was harboring at least six dogs, many of them pit bulls and at least one with scars on its face. Three of the dogs were discovered inside dog crates in the garage and another was likely kept inside the house. Neighbors had noticed Scott "shuffling dogs around," and had reported sounds of dogs "crying" from the premises. Considered in this context, the muscle-building supplements and the modified treadmill—enclosed with plywood and with two chains hanging from the top to keep a dog on the track—can be reasonably viewed as associated with dog-fighting activities. The constellation of facts contained in the affidavits, when viewed through the lens crediting the magistrate's determination, outlines a commonsense conclusion that Scott was involved with dog fighting. As such, the affidavit provided the magistrate with a substantial basis for concluding probable cause existed to issue the warrant, and evidence properly collected under the warrant should not be suppressed. *See Randolph*, 4 P.3d at 481.

## III. Conclusion

For the foregoing reasons, we reverse the trial court's order suppressing evidence collected while executing the second search warrant and remand this case for further proceedings consistent with this opinion.

Justice EID concurs in the judgment and Justice RICE joins in the concurrence.

Justice EID, concurring in the judgment.

The People in this case frame their appeal in terms of challenging the district court's refusal to find the search to be justified by the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I would therefore address the appeal in terms of good faith. *See generally People v. Altman*, 960 P.2d 1164, 1172–73 (Colo.1998) (recognizing that the court, at its discretion, may address the good faith issue before considering whether the search was supported by probable cause). As the majority opinion demonstrates, maj. op. at 897–899, the affidavits in this case were not the sort of "bare bones" affidavits on which reliance would be unreasonable. *See People v. Gutierrez*, 222 P.3d 925, 941–44 (Colo.2009). Because the People have framed their appeal in terms of good faith, irrespective of whether there is actual probable cause, and because I would find that the officers relied upon the affidavits in good faith, I concur in the result reached by the majority.

I am authorized to say that JUSTICE RICE joins in this concurrence.

---

4. Reading together multiple affidavits in no way dilutes Fourth Amendment requirements that the information relied upon be reliable, independently verified where necessary, and not stale.